931 F.2d 900
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Clyde A. MELTON, Plaintiff-Appellant,
v.
Lewis SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-5103.
 United States Court of Appeals, Tenth Circuit.
 May 2, 1991.
 
 Before HOLLOWAY, Chief Judge, MOORE, and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant-appellant Clyde A. Melton seeks review of an order of the United States District Court for the Northern District of Oklahoma affirming the Secretary's decision to deny claimant's application for social security benefits under 42 U.S.C. Sec. 401-33.
 
 
 3
 Claimant filed his request for benefits in December of 1986, alleging disability as of May 1986 due to an enlarged spleen, cirrhosis of the liver, and a low blood platelet count. Benefits were denied initially and on reconsideration, after which claimant requested a hearing before an administrative law judge (ALJ).
 
 
 4
 The case as presented to the ALJ involved whether certain other impairments met or equaled an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1, or whether the totality of claimant's impairments qualified claimant as disabled under the Social Security Act.
 
 
 5
 The ALJ found that Mr. Melton had severe morbid obesity; history of alcohol abuse, with associated micronodular cirrhosis and alcoholic liver disease (hepatitis); hypersplenism; episodes of pitting edema in both ankles; and stasis dermatitis in both lower legs, but did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1.
 
 
 6
 After rejecting claimant's subjective complaints, including severe continuous pain, as "not credible to the extent alleged," the ALJ then concluded that although claimant was unable to perform his past relevant work, claimant had the residual functional capacity (RFC) to perform sedentary work, and that therefore under "[s]ection 404.1569 of Regulations No. 4 and Rule 201.21, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, considering the claimant's residual functional capacity, age, education, and work experience, [claimant] is not disabled."
 
 
 7
 Claimant then sought review in the district court pursuant to 42 U.S.C. Sec. 405(g). Following a hearing, the magistrate submitted findings and recommendations, determining that the ALJ had ignored certain medical evidence of causes for disabling pain and the opinion of claimant's treating physician (Dr. Gerald D. Wooton) that claimant's problems met or equaled the criteria of the listing of impairments. The magistrate recommended reversing the ALJ and finding claimant disabled and entitled to benefits.
 
 
 8
 The district court overruled the magistrate's recommendation, concluding that the ALJ's decision to reject Dr. Wooton's opinion was supported by relevant evidence and specific legitimate reasons. The court also held that the ALJ had considered claimant's nonexertional impairments in finding that claimant's impairments "did not further limit the jobs available to the plaintiff in the ALJ's application of the grids."
 
 
 9
 From the district court's order affirming the Secretary's denial of benefits, claimant has timely appealed. The issues he raises are as follows:
 
 
 10
 1. The court below and the Secretary ignored the uncontradicted findings of the appellant's treating physician and the treating physician's opinion and relied on unsubstantiated statements of social security physicians.
 
 
 11
 2. The appellant's medical condition meets and even exceeds the criteria of the social security listing of impairments.
 
 
 12
 3. The Secretary misapplied the medical vocational guidelines when he failed to consider the appellant's nonexertional impairments and pain, effectiveness (sic) medications, and avoidance of trauma to the body.
 
 
 13
 4. The Secretary failed to fully develop the record.
 
 
 14
 A reviewing court considers only whether the Secretary's decision is supported by substantial evidence. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Although we will meticulously examine the record, we will not weigh the evidence or substitute our discretion for that of the Secretary. Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983).
 
 
 15
 A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. Ray v. Bowen, 865 F.2d 222 (10th Cir.1989) (evidence not substantial if overwhelmed by other evidence or merely a conclusion); Bernal v. Bowen, 851 F.2d at 299; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988) (same). The agency decision is also subject to reversal if the incorrect legal standard was applied. Gatson v. Bowen, 838 F.2d 442, 449 (10th Cir.1988); Williams v. Bowen, 844 F.2d at 750. Nonetheless, the question on appeal is not whether there was evidence which would have supported a different result but whether there was substantial evidence in support of the result reached.
 
 
 16
 The ALJ followed the sequential analysis required by the social security regulations. The order of this five-step analysis is as follows:
 
 
 17
 1. Is the claimant presently pursuing work that constitutes substantial gainful activity? If so, he or she is not disabled, even if medically impaired.
 
 
 18
 2. If the claimant is not presently doing substantial gainful activity, then does the claimant have a severe impairment--i.e., one that significantly limits one's physical or mental ability to do basic work activities? If not, there is no disability.
 
 
 19
 3. If the claimant has a severe impairment, does the impairment meet or equal a listed impairment in 20 C.F.R. Sec. 404, Subpart P, Appendix 1 (1986)? If so, and if it has lasted or can be expected to last for at least twelve months, it constitutes a disability, and there is no need to proceed with further evaluation.
 
 
 20
 4. If the severe impairment does not meet or equal a listed impairment, does it, when considered along with claimant's residual functional capacity and the physical and mental demands of the job, prevent the claimant from doing past relevant work? If not, there is no disability, and the evaluation process stops.
 
 
 21
 5. If the claimant cannot return to past relevant work because of a severe impairment, the final question is whether the claimant's residual functional capacity, age, education, and work experience allow the performance of other work? If not, there is a disability.
 
 
 22
 Jozefowicz v. Heckler, 811 F.2d 1352, 1355 (10th Cir.1987) (footnote omitted); see also Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir.1988).
 
 
 23
 If a finding of disabled or not disabled can be made at any step, further inquiry is not needed. Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir.1987); Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir.1988) (review ends at any point finding of disabled or not disabled made).
 
 
 24
 The claimant bears the burden of establishing a disability, i.e., the first four steps. Williams v. Bowen, 844 F.2d at 748 n. 2. However, once the ALJ determines that petitioner can no longer perform his past relevant work, the burden shifts to the Secretary to show that claimant has the residual capacity to perform some other kind of work in the national economy. Gossett v. Bowen, 862 F.2d at 804; Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir.1987).
 
 
 25
 The ALJ recited at length claimant's medical history, including hospitalizations and outpatient visits, which we need not repeat. The areas of contention are the interpretation of certain medical notations and diagnoses, the weight accorded two evaluation letters furnished by claimant's primary (but not only) treating physician, Dr. Wooton, and the ALJ's evaluation of claimant's subjective claim of pain.
 
 
 26
 The first two issues raised by claimant are somewhat overlapping, and we consider them together.
 
 
 27
 Claimant contends that his impairments meet or equal those in App. 1 of Subpt. P, Sec. 10.10 A and D. Section 10, entitled "Multiple Body Systems," covers impairments involving more than a single body system:
 
 
 28
 10.10 Obesity. Weight equal to or greater than the values specified in Table 1 for males, Table II for females (100 percent above desired level) and one of the following:
 
 
 29
 A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine; or
 
 
 30
 .............................................................
 
 
 31
 ...................
 
 
 32
 * * *
 
 
 33
 D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema.
 
 
 34
 As noted above, claimant bears the burden of establishing this disability. Although the record contains evidence of different weights over the several years prior to the alleged onset of disability, claimant's weight was most frequently in the neighborhood of 350 lbs., which is greater than the value in Table 1 for a man of his height. The question is whether he also established the criteria needed by either section A or D.
 
 
 35
 As to part A, there are references to "degenerative joint disease" and (from chest X-rays) to some "degenerative change of the dorsal spine." However, Dr. Wooton's "bare statement in his letter of [September 18, 1987,] that claimant has a section [10A. and D] impairment does not meet the level of evidence required to prove the existence of such an impairment. See 20 C.F.R. Sec. 404.1527." Harris v. Secretary of Health & Human Servs., 821 F.2d 541, 543 (10th Cir.1987). In other words, claimant must prove all the elements of a particular listing.
 
 
 36
 Conspicuously absent is any history of "limitation of motion in any weight bearing joint or spine (on examination)." Indeed, in his brief, claimant makes no argument that the record shows any limitation of motion associated with a weight bearing joint or spine. To the contrary, the record shows from several extensive examinations made in connection with the hospitalizations that there was "no abnormal lateral curvatures of the vertebrae column" and "adequate" range of motion (Supp.Vol. II, p. 106), claimant's denial (on examination) of "any arthritic complaints" (Supp.Vol. II, p. 126), "no limitation of motion or pain on movement of the extremities, and no back pain elicited" (Supp.Vol. II, p. 140), and "no evidence of red or painful, swollen joints, and no decreased range of motion" (Supp.Vol. II, p. 189). Also absent from the evidence is any indication that claimant has sought medical treatment for pain in a weight bearing joint.
 
 
 37
 Impairments of the musculoskeletal system, of which arthritis is one, 20 C.F.R. pt. 404, subpt. P, App. 1, Secs. 1.02-1.08, are established through detailed history, physical examination, X-rays, 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 1.00(b) (1986), and the use of specific findings, such as "pain, muscle spasm, and significant limitation of motion in the spine" and "appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." Id. at section 1.05(C).
 
 
 38
 Other than the nonspecific references to joint disease and one other to a past history of arthritis (Supp.Vol. II, p. 143), there is simply no evidence indicating any limitation in motion.
 
 
 39
 Claimant next argues that he meets the criteria of subpt. D, or, alternatively, that he in fact exceeds the requirements when his impairments are considered in combination. Again, however, he does not meet all the required elements of subpt. D. Missing is any indication of varicosities, spider angioma or other vascular disturbances. (Supp.Vol. II, p. 140.) Claimant's assertion that he suffers from persistent edema comes from a notation of "mild pretubial edema" (Supp.Vol. II, p. 140) and another of "trace lower extremity edema" (Supp.Vol. II, p. 181). Other notations, listed in our discussion of subpt. A, specifically declare the absence of swollen joints and pain. Again, likewise, lacking is any indication he has sought treatment for this condition.
 
 
 40
 The only mention of chronic venous insufficiency is a reference to "discoloration of skin apparently from chronic venous insufficiency" (Supp.Vol. II, p. 142) in connection with one of his hospitalizations (emphasis ours). However, even assuming that stasis dermatitis (evidence of which is contained in the record) is caused by venous insufficiency, lack of references to the other criteria of subpt. D supports the ALJ's determination that claimant has failed to meet the burden of establishing he meets the requirements of the listing. Finally, the mere presence of several impairments, some of which only partly fulfill the requirements of a particular listing, does not establish a medical equivalence.
 
 
 41
 Claimant's argument that the ALJ ignored his treating physician's opinion and relied on the social security physicians' evaluations is without merit for several reasons. First, Dr. Wooton was only one of several treating physicians. The only record evidence of Dr. Wooton's treatment consists of progress notes and does not involve the extensive reports compiled by treating doctors when claimant was hospitalized. Nothing in the progress notes accounts for the subsequent determination of disability issued by Dr. Wooton.
 
 
 42
 Claimant relies heavily on two evaluation letters written by this doctor. The evaluation letter written by Dr. Wooton in March of 1987 (Supp.Vol. II, p. 199) outlined in conclusory form plaintiff's various complaints and advised that a blow to the stomach could cause a life-threatening situation. This letter is clearly in response to the idea that plaintiff could not perform his job as a boilermaker (his lifelong career) or possibly as a night watchman (his last job). The opinion that plaintiff could not perform his pervious occupations, however, is devoid of any basis for the claim of total disability. In addition, plaintiff fell from a ladder and landed on his stomach in April of 1987 with apparently no long-lasting effects. The April incident undercuts the credibility of Dr. Wooton's assessment of the severity of claimant's condition.
 
 
 43
 In September of 1987, apparently five or six months after the last time he saw claimant, Dr. Wooton furnished another letter concluding that claimant had "X-ray evidence of arthritis of the dorsal spine, with complaints of pain, and that [claimant] also was chronic venous insufficiency of the lower extremities with pain on weight bearing, with persistent edema, and that [claimant] would, therefore, meet the criteria of 10.10 A. and D. of the Listing of Impairments [20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 10.10 A and D) ]." (Supp.Vol. II, p. 239). This evaluation is conclusory, however, and not supported by the record evidence. The reports of the other treating physicians, none of whom even remotely suggested that claimant was disabled, simply do not establish the existence of extreme impairments.
 
 
 44
 Second, although the ALJ mentioned that the two social security physicians had evaluated the medical evidence and concluded claimant had failed to establish entitlement to disability benefits, the ALJ did not rely on those evaluations to arrive at his decision. Finally, we are persuaded that the ALJ adequately articulated specific reasons for disregarding Dr. Wooton's September, 1987, opinion which was (1) issued several months after the doctor had last seen claimant and (2) not based on substantial medical evidence in the record. See Reyes v. Bowen, 845 F.2d at 245.
 
 
 45
 Claimant next asserts the ALJ misapplied the medical vocational guidelines by failing to consider nonexertional impairments of pain, adverse side effects of medication, and avoidance of trauma to the body. The latter has been discussed (and in any event is irrelevant to the consideration of whether claimant can perform sedentary work).
 
 
 46
 Having now reached step five of the sequential process, the ALJ determined that claimant could perform the full range of sedentary work and was therefore not disabled. Sedentary work is that which:
 
 
 47
 involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 48
 20 C.F.R. Sec. 404.1567(a) (1988).
 
 
 49
 In applying the Medical Vocational Guidelines, 20 C.F.R. 404.1569 and p 404, App. 2, Table 1, Rule 201.21 (the grids) to claimant, there is no dispute as to his age, education, literacy, and work experience. The question is whether there is substantial evidence on the record to support the ALJ's determination that petitioner could perform the full range of sedentary work. See Dixon v. Heckler, 811 F.2d at 508. Only if this factor in the grids equation, the residual functional capacity (RFC), was properly decided can the automatic application of the grids be upheld. See Channel v. Heckler, 747 F.2d 577, 582 (10th Cir.1984).
 
 
 50
 A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). No doubt, a claimant may have significant exertional limitations that prevent him from performing the strength requirements of even sedentary work.
 
 
 51
 Williams v. Bowen, 844 F.2d at 751-52 (footnote omitted).
 
 
 52
 The grids may not be applied conclusively in a given case unless the plaintiff's characteristics precisely match the criteria of a particular rule. Ray v. Bowen, 865 F.2d at 225; Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir.1988); Gatson v. Bowen, 838 F.2d at 446. This is because the grids measure a claimant's exertional limitations, i.e., strength, Ray v. Bowen, 865 F.2d at 225; Gossett v. Bowen, 862 F.2d at 806, and because an individual's capacity to work may also be limited by nonexertional limitations, such as pain. Gossett v. Bowen, 862 F.2d at 806; Ray v. Bowen, 865 F.2d at 225; Channel v. Heckler, 747 F.2d at 580.
 
 
 53
 Thus, the presence of a nonexertional limitation which prevents the applicant from performing the full range of work may preclude application of the grids and dictate their use only as a framework to determine disability. See Gossett v. Bowen, 862 F.2d at 806; Talbot v. Heckler, 814 F.2d 1456, 1460 (10th Cir.1987); Gatson v. Bowen, 838 F.2d at 446; Campbell v. Bowen, 822 F.2d at 1522-23 n. 2.
 
 
 54
 However, the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d at 225; Gossett v. Bowen, 862 F.2d at 807-808. Rather, use of the grids is foreclosed only "[t]o the extent that nonexertional impairments further limit the range of jobs available to the claimant." Channel v. Heckler, 747 F.2d at 582 n. 6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.1983). Here, the ALJ in effect concluded that petitioner's ability to perform the full range of jobs was not diminished by the pain. See Channel v. Heckler, 747 F.2d at 581.
 
 
 55
 This court recently outlined the framework that is to be used in evaluating a disability claim based on pain. See Luna v. Bowen, 834 F.2d 161 (10th Cir.1987). The process is described as follows:
 
 
 56
 If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the alleged pain." ... If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling.
 
 
 57
 Id. at 163 (citation omitted). The first component of the inquiry, the objective impairment prerequisite, is fulfilled without regard to subjective evidence. The second component, a nexus between the impairment and the alleged pain, is examined "tak[ing] the subjective allegations of pain as true." Id. Upon reaching the third component--considering all evidence presented--the decision maker considers all medical data presented, any other objective indications of pain, and subjective accounts of the severity of the pain. At this point, the decision maker may assess the claimant's credibility. Id.
 
 
 58
 It is undisputed that Mr. Williams' degenerative disc disease is an impairment capable of producing pain. Since the first component is present, our attention focuses on the nexus between this impairment and Mr. Williams' subjective allegations of pain. The impairment must be reasonably expected to produce the pain that is being claimed. Id. However, the nexus between the impairment and the alleged pain can be loose. "[I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain" are sufficiently consistent to satisfy this part of the evaluation process. Id. at 164.
 
 
 59
 Williams v. Bowen, 844 F.2d at 753-54.
 
 
 60
 We have long recognized that substantial weight must be given evidence provided by treating physicians. See Bernal v. Bowen, 851 F.2d at 301; Eggleston v. Bowen, 851 F.2d at 1246; Reyes v. Bowen, 845 F.2d at 244-45; Broadbent v. Harris, 698 F.2d at 412 (opinions of treating physicians must be given greater weight than Secretary's doctor who examined claimant only once). In this case, however, the weight of the evidence of all the treating physicians simply does not support claimant's assertion of disabling pain.
 
 
 61
 It is also clear from the record that the ALJ considered and evaluated claimant's allegations of pain. See Huston v. Bowen, 838 F.2d 1125, 1131 (10th Cir.1988) (claimant entitled to consideration of nonmedical objective and subjective testimony of pain); see also Williams v. Bowen, 844 F.2d at 754; Luna v. Bowen, 834 F.2d at 165. However, subjective pain must be evaluated with due consideration for credibility, motivation, and medical evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir.1984); Broadbent v. Harris, 698 F.2d at 413. The ALJ's determination of credibility is a factor to be considered in determining whether his decision is supported by substantial evidence. Nieto v. Heckler, 750 F.2d at 62. See also Gossett v. Brown, 862 F.2d at 807 (generally ALJ's credibility determinations are treated as binding).
 
 
 62
 Although the medical reports indicate the presence of some pain, the evidence is not so strong as to support claimant's allegation of disability. None of the majority of the treating physicians determined Mr. Melton to be disabled either by virtue of his physical impairments or by disabling pain. Only Dr. Wooton, in a conclusory statement not attendant to an examination, opined that claimant was disabled. We therefore conclude there is sufficient evidence on the record as a whole to support the ALJ's determination that petitioner's pain was not sufficiently disabling to preclude use of the grids.
 
 
 63
 Finally, claimant vaguely asserts that the ALJ and the Secretary are required "to fully develop the record and to take all the facts into consideration and weigh them equally and fairly." There is no indication what was not fully developed in this record. We fail to see anything missing, and thus this argument is without merit. Under the applicable regulations, if sufficient medical or other evidence is not provided by claimant, the Secretary is required to make a decision on the information available. See 10 C.F.R. Sec. 404.1516; Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987).
 
 
 64
 Accordingly, the judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3