Benjamin S. GOSSETT,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary, Department of Health and Human
Services, Defendant–Appellee.

No. 86–2149.

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1988.
Rehearing and Rehearing En Banc
Denied Feb. 13, 1989.

Paul F. McTighe, Jr., Tulsa, Okl., for plaintiff-appellant.

Edwin L. Meese, U.S. Atty. Gen., Dept. of Justice, Washington, D.C., Roger Hilfiger, U.S. Atty., Muskogee, Okl., Gayla Fuller, Chief Counsel, Region VI, Patrick A. Hudson, Principal Regional Counsel, Social Sec. Disability Litigation Branch, and Marguerite Lokey, Asst. Regional Counsel, Office of the General Counsel, U.S. Dept. of Health and Human Services, Dallas, Tex., for defendant-appellee.

Before LOGAN, SETH and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

Benjamin Gossett ("claimant") appeals from the district court's order affirming the decision of the Secretary of Health and Human Services ("the Secretary") to deny Mr. Gossett's application for Social Security disability benefits. For reversal, Mr. Gossett argues that the Secretary's decision was not supported by substantial evidence on the record as a whole because the Administrative Law Judge (ALJ) improperly relied on the medical-vocational guidelines ("grids") in finding Mr. Gossett was not disabled. In particular, Mr. Gossett claims that the Secretary applied the grids without adequately considering his nonexertional limitations. Because the Secretary's decision is supported by substantial evidence in the record, and for the reasons discussed below, we affirm the judgment of the district court.

Mr. Gossett, a high school graduate now 35 years old, has worked intermittently on railroads as a trackman and as a machine operator. Between stints on the railroads he operated a bulldozer for a sanitation department, constructed hotbox detectors for an electronic firm under contract with a railroad, and drove trucks for a national trucking operation. Under the regulations promulgated pursuant to the Social Security Act, the claimant is a younger individual, with a high school education, at least unskilled, who has previously engaged in work of at least medium type. *See* 20 C.F.R. §§ 404.1563–.1568, 416.963–.968. Mr. Gossett has endured a succession of physical misfortunes over the years. He was treated for rattlesnake bite when young, and as a teenager he suffered a laceration of the ulnar nerve of his wrist while swimming. He apparently sustained several injuries while competing in rodeos, including a back injury from a jolt during a bull ride. In 1975, while driving on a country road, he collided with a cow and sustained a contusion of his left shoulder and left knee, partial separation of the acromio-clavicular joint, back strain, and an injury to his right knee. He underwent surgery a year after the accident to repair a chronic tear, anterior cruciate ligament, of the right knee.

In May 1983, while removing ballast from between railroad ties with a pickax, the claimant inadvertently struck the end of a tie with great force, thereby twisting and dislocating his wrist. In August 1983 he fell and twisted his right knee, injuring it anew. He received medical attention for his wrist only after he injured his knee. The claimant's physician and surgeon, James W. Long, determined that surgery on both his knee and wrist would be necessary. He first underwent surgery for an arthroscopic subtotal medial meniscectomy of his right knee. Less than a month later, another surgeon, A.B. Hathcock, performed a mid-carpal fusion of Mr. Gossett's right wrist, which required that a graft be taken from the iliac crest of his left pelvis. Three weeks later, after complications in recovery of the left pelvis wound, exploratory surgery disclosed a sponge in the wound, which was removed. In July 1984, Mr. Gossett began seeing Dr. Donald Sutmiller. In March 1985, in response to the claimant's complaints of joint pain, swelling and stiffness, Dr. Sutmiller prescribed medication for what he diagnosed as multiple degenerative joint disease. In a report dated April 13, 1985, Dr. Sutmiller stated that he regarded Mr. Gossett's expressions of pain sincere, though Mr. Gossett's range of motion was satisfactory. The doctor opined that Mr. Gossett suffered from arthritis of multiple joints, "mostly ... due to old trauma," and "probably including his right knee and ankle and elbow, his left hip and hsoulder [sic], both wrists, and his back."

Mr. Gossett initially applied for Social Security disability benefits on February 7, 1985, alleging that he had been disabled since August 15, 1983, due to problems

with his right knee, left and right wrists, and his left hip and shoulder. His disability report noted the limited mobility of both his right knee and right wrist, that he could not walk on uneven surfaces, and he could "walk on level surfaces only until knee starts swelling (swelling occurs after about 2 hrs.)." Nevertheless, he added:

"I'm an outdoors person. I drive thru the mountains. I camp out a lot. I fish & hunt. (abt 2 times in last year)."

Mr. Gossett also reported that he did not have much difficulty driving his four-wheel-drive utility vehicle with a standard shift transmission. The Social Security Administration and the Oklahoma Disability Determination Services denied his application initially and upon reconsideration.

The claimant obtained a de novo hearing before an ALJ. Both Mr. Gossett and his wife testified at the hearing as to the range of activities he engaged in at home and the extent of his pain. At one point his attorney questioned him about his limitations in walking.

"Q How long can you walk?

"A A half a mile, you know, flat—if it's good and flat, I can go about a half mile before I have to stop and sit down for a while to rest a while.

. . . .

"Q What—what happens after you've walked for half a mile?

"A Oh, after I walk for half a mile, my leg draws slightly and my ankle gets stiff. That's because of the swelling and like the circulation."

Mr. Gossett also stated that medication he took for pain and swelling affected his ability to drive his car, and that "I don't drive my own car if I can help it." Three days after the hearing, the ALJ issued his decision that the claimant was not disabled within the meaning of the Social Security Act. The Appeals Council denied Mr. Gossett's request for a review of the hearing decision. He then brought suit in the United States District Court for the Eastern District of Oklahoma, seeking to overturn the denial of benefits. The court affirmed the decision of the ALJ and entered judgment on behalf of the Secretary.

The Social Security Act entitles every individual who "is under a disability" to a disability insurance benefit. 42 U.S.C.A. § 423(a)(1)(D) (1983). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A). An individual

"shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

*Id.* § 423(d)(2)(A).

Under the Social Security Act the claimant bears the burden of proving a disability, as defined by the Act, which prevents him from engaging in his prior work activity. *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988); 42 U.S.C.A. § 423(d)(5) (1983). Once the claimant has established such a disability, the burden shifts to the Secretary to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. *Reyes,* 845 F.2d at 243; *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988); *Harris v. Secretary of Health and Human Services,* 821 F.2d 541, 544–45 (10th Cir. 1987). The Secretary meets this burden if the decision is supported by substantial evidence. *See Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir.1987); *Brown v. Bowen,* 801 F.2d 361, 362 (10th Cir.1986). "Substantial evidence" requires "more than a scintilla, but less than a preponderance," and is satisfied by such relevant "evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen,* 822 F.2d at 1521; *Brown,* 801 F.2d at 362. The determination of

whether substantial evidence supports the Secretary's decision, however,

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' "

*Fulton v. Heckler,* 760 F.2d 1052, 1055 (10th Cir.1985) (quoting *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985)). Thus, if the claimant establishes a disability, the Secretary's denial of disability benefits, based on the claimant's ability to do other work activity for which jobs exist in the national economy, must be supported by substantial evidence.

The Secretary has established a five-step process for evaluating a disability claim. *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2290–95, 96 L.Ed.2d 119 (1987). The five steps, as set forth in *Reyes v. Bowen,* 845 F.2d at 243, proceed as follows:

(1) A person who is working is not disabled. 20 C.F.R. § 416.920(b).

(2) A person who does not have an impairment or combination of impairments severe enough to limit his ability to do basic work activities is not disabled. 20 C.F.R. § 416.920(c).

(3) A person whose impairment meets or equals one of the impairments listed in the "Listing of Impairments," 20 C.F.R. § 404, subpt. P, app. 1, is conclusively presumed to be disabled. 20 C.F.R. § 416.920(d).

(4) A person who is able to perform work he has done in the past is not disabled. 20 C.F.R. § 416.920(e).

(5) A person whose impairment precludes performance of past work is disabled unless the Secretary demonstrates that the person can perform other work available in the national economy. Factors to be considered are age, education, past work experience, and residual functional capacity. 20 C.F.R. § 416.920(f).

If at any point in the process the Secretary finds that a person is disabled or not disabled, the review ends. *Reyes,* 845 F.2d at 243; *Talbot v. Heckler,* 814 F.2d 1456, 1460 (10th Cir.1987); 20 C.F.R. § 416.920.

Neither party contests the ALJ's step one finding that Mr. Gossett is not substantially gainfully employed, nor do they dispute the step two finding that he has a severe impairment. Mr. Gossett does not claim that his impairment is the same as or medically equivalent to an impairment described in the "Listing of Impairments," thus rendering him per se disabled. The ALJ's step four finding that Mr. Gossett cannot return to his former substantial gainful employment, which is not disputed, shifts to the Secretary the burden of proving that Mr. Gossett's impairments do not prevent him from performing other work. *See Gatson v. Bowen,* 838 F.2d 442, 448 (10th Cir.1988).

Mr. Gossett disputes only the ALJ's step five finding. The ALJ considered the medical records of three physicians who treated the claimant over extended periods of time, the report of another physician who examined him at the request of the Social Security Administration, the testimony of the claimant and his wife, and the information he volunteered on his disability report. "After giving due consideration to credability [sic], motivation, and the medical evidence," the ALJ rejected "the statements and testimony about disabling impairments, because it is not credible and it is probably exaggerated." In his findings, the ALJ stated flatly that "[t]here are no nonexertional limitations." Considering his exertional impairments, the ALJ concluded that the claimant had the residual functional capacity ("RFC") to work on a continuous basis in light or sedentary work. Finally, considering the claimant's RFC, age, education, and work experience, the ALJ found that the medical-vocational guidelines ("grids") directed a conclusion that the claimant was not disabled.

Mr. Gossett argues first that the ALJ erroneously rejected his complaints of pain. Second, he argues that had the ALJ accepted his pain complaints, such pain and the effect of the medication intended to relieve it would have constituted nonexertional impairments that would have precluded a me-

chanical application of the grids to his claim. Finally, he argues that because the standards of the grid are not applicable, the ALJ should have developed testimony from a vocational expert on which to base his decision, and his failure to do so deprives his decision of the substantial evidence that must support it.

Because the Social Security Act defines disability with reference to "substantial gainful work which exists in the national economy," 42 U.S.C.A. § 423(d)(2)(A) (1983), when the burden shifts to the Secretary to prove an individual is not disabled he must establish the existence of such work. *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1953, 76 L.Ed.2d 66 (1983). Prior to promulgation of the grids in 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy. *Id.* at 461, 103 S.Ct. at 1954. The grids obviate the need for such testimony by setting forth rules that identify whether jobs requiring specific combinations of the four factors identified by Congress—RFC, age, education, and work experience—exist in the national economy. *Id.* at 461–62, 103 S.Ct. at 1954.

■ Automatic application of the grids is appropriate only when a claimant's RFC, age, work experience, and education precisely match a grid category. *Heckler v. Campbell,* 461 U.S. at 462 n. 5, 103 S.Ct. at 1955 n. 5; *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988); *Gatson,* 838 F.2d at 446; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984); 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(e)(2). Residual functional capacity, however, primarily measures the claimant's exertional capacity—his strength. *Huston,* 838 F.2d at 1131. An individual's capacity to work may also be limited by so-called nonexertional limitations, such as pain. *Channel,* 747 F.2d at 580. As we observed in *Huston v. Bowen,* 838 F.2d at 1131, pain can be either an exertional or nonexertional limitation, or both:

"Nonexertional pain perhaps can be characterized as pain that is present whether or not a claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges (sedentary through very heavy). Under the regulatory framework, exertion appears to be measured primarily in terms of the strength requirements for such physical activities as walking, standing, lifting, carrying, pushing, pulling, reaching, and handling."

When nonexertional limitations affect the range of activities that the claimant can participate in, the grids can serve only as a framework to aid in determining whether sufficient jobs exist for a claimant, given his limitations and characteristics. When the Secretary applies the grids without adequately considering the claimant's nonexertional limitations, we have not hesitated to overturn the Secretary's finding of nondisability. *Williams,* 844 F.2d at 760.

Subjective testimony that the claimant suffers pain by itself cannot establish a finding of disability. *Gatson,* 838 F.2d at 447. By statute, objective medical evidence must establish an impairment that reasonably could be expected to produce the alleged pain, and statements regarding the intensity and persistence of the pain must be consistent with the medical findings and signs. *Id.* at 447; *Luna v. Bowen,* 834 F.2d 161, 162–65 (10th Cir.1987); 42 U.S.C.A. § 423(d)(5)(A) (Supp.1988). The medical impairment must be shown to exist, and should be reasonably capable of producing the alleged pain level in some individuals, *Huston,* 838 F.2d at 1125, but an impairment likely to produce some pain may reasonably be expected to produce severe pain in a particular individual. *Luna,* 834 F.2d at 164.

Dr. Sutmiller found that Mr. Gossett suffered pain due to arthritis of the multiple joints caused by old trauma. While a medical examination necessarily involves a subjective element (an evaluation of the credibility of the patient's subjective complaints of pain), it is also based on an observation of the patient and an evaluation of his medical history, and thus may constitute the necessary objective medical evidence which must support a claim of disabling pain. *Gatson,* 838 F.2d at 448; *See Luna,* 834 F.2d at 166. Neither party disputes

that Mr. Gossett has suffered numerous physical traumas, or that arthritis can cause tremendous pain in some individuals. However, Dr. Sutmiller's opinion fails to fully substantiate Mr. Gossett's subjective pain testimony, and other evidence seriously undermines that testimony. Because other medical and nonmedical evidence supports a finding that Mr. Gossett does not suffer disabling pain, the ALJ properly applied the grids. *See Huston,* 838 F.2d at 1131.

The ALJ found that Mr. Gossett's testimony was not credible. Because "[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court," we generally treat credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). This approach seems particularly appropriate when, as here, the claimant's complaints of pain have grown in severity from the initial disability report to the hearing. Though the claimant alleges he became disabled in August 1983, he did not seek medication for joint pain until 20 months later, or one month after he filed for Social Security disability benefits. Dr. Sutmiller also reported that despite the claimant's complaints of pain he demonstrated a satisfactory range of movement for the joints in question.

■ Mr. Gossett takes issue with the ALJ's reliance on his daily activities. Apparently because he rejected the credibility of the claimant's testimony, the ALJ resorted to the disability report the claimant filed, in which he stated that he camped out frequently, hunted and fished, and had no difficulties driving his standard-shift utility vehicle. He also acknowledged in his testimony that he mowed the lawn occasionally, though not without difficulty. We agree with Mr. Gossett that evidence that a claimant engages in limited activities, such as short-term work or driving, does not establish that the claimant can engage in light or sedentary work activity. *Talbot,* 814 F.2d at 1462; *Broadbent,* 698 F.2d at 413. We believe, however, that such activities may

be considered, along with other evidence, in determining whether a person is entitled to disability benefits. *Talbot,* 814 F.2d at 1462–63. Viewed against the entire record, Mr. Gossett's activities support a finding of nondisability.

■ The most persuasive evidence on which the ALJ relied are the records of two of Mr. Gossett's treating physicians, Drs. Long and Hathcock. As Mr. Gossett's treating physicians, their opinions of his condition deserve great weight. *See Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987). Dr. Hathcock stated in a letter to the General Roadmaster of Union Pacific, dated July 16, 1984, that Mr. Gossett could probably work with his right wrist, and conveyed Dr. Long's similar opinion with respect to his right knee. Dr. Hathcock warned that he should be restricted from swinging a mall on the tie gang, but limited the period of restricted activity to two weeks. Privately, Mr. Gossett's physicians were more enthusiastic about his recovery. Dr. Long noted in his records that "the patient has had an excellent response to surgical treatment and should be able to return to most types of gainful employment" other than "heavy manual labor requiring the use of a sledgehammer using strong twisting motions." A month prior to writing his letter to Union Pacific, Dr. Hathcock noted that "I think he could return to work from his right wrist standpoint."

We do not doubt that Mr. Gossett experiences some pain as a result of his myriad accidents and surgeries. But as we stated in *Brown v. Bowen,* 801 F.2d 361, 362–63 (10th Cir.1986) (quoting *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983)):

"[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."

Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." *Channel,* 747 F.2d at 582 n. 6. The presence of nonexertional impairments precludes reliance on the grids only to the

extent that such impairments limit the range of jobs available to the claimant. *Id.*

The finding of the ALJ that Mr. Gossett suffered from no nonexertional impairment serious enough to limit the range of jobs available to him was supported by substantial evidence. Thus the ALJ properly relied on the medical-vocational guidelines to demonstrate the existence of substantial gainful work in which Mr. Gossett could engage.

Accordingly, the judgment appealed from is AFFIRMED.