Henry WATTS, Plaintiff,

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 89–01127–T.**

United States District Court, D. Kansas.

May 10, 1991.

Thomas Mullinix, Kansas City, Kan., for plaintiff.

Steve Lester, U.S. Attys. Office, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motion of the Secretary for an order affirming his decision to deny disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* After an initial hearing and supplemental hearing with a vocational expert, plaintiff was denied benefits by the administrative law judge. This decision was affirmed by the Appeals Council, which stands as a final decision by the Secretary.

At the time of his hearing before the ALJ, plaintiff was 44 years old and had had diabetes mellitus for approximately 22 years. Plaintiff developed renal failure and received a kidney transplant in 1982. Subsequently, plaintiff developed severe coronary artery disease that led to a myocardial infarction on November 14, 1985. Plaintiff underwent a multivessel coronary angioplasty on November 25, 1985, and underwent a second angioplasty in February 1986. Tr. 182.

On February 21, 1986, plaintiff's cardiologist, Dr. Johnson, described the results of plaintiff's angioplasty as "excellent." Tr. 179–80. On April 22, 1986, and again on September 4, 1986, plaintiff reported to Dr. Johnson that he had been "getting along quite well," and had not been experiencing any chest discomfort. Tr. 173.

Plaintiff filed his initial application for disability insurance payments on May 9, 1986, approximately three months after his second angioplasty. In his application, plaintiff reported that he walked 40 minutes a day, read for two hours, wrote for an hour each day, and that his social contacts with friends and relatives were not limited. He was able to go out and lunch with friends three times a week and spend two hours playing with his son. Plaintiff also stated that he could drive a car, and that he napped one or two hours for "maybe 4 days a week." Tr. 95. At this time, plaintiff was seeing Dr. Sharma, his primary physician, once every six to eight weeks.

Plaintiff has not worked since his heart attack in November 1985. At the time of his heart attack, plaintiff worked as the vice president of a pharmaceutical company. Plaintiff holds a Bachelor of Science Degree in Business Administration with a major in accounting. Tr. at 37. At his hearing, plaintiff stated that his former job was very stressful, and that this prevented him from returning to his job. Tr. 47. In fact, the stressful nature of his former job was of some concern to Dr. Sharma. In a letter to the Social Security Administration dated October 1, 1986, Dr. Sharma counseled against "any strenuous physical exercise and situations which involves [sic] a lot of physical as well as mental stress." Tr. 172. Plaintiff testified that stress increases his hypertension, which in turn adversely affects his three conditions of diabetes, renal disease, and coronary artery disease. Tr. 48.

Plaintiff testified that he takes a nap almost every day due to fatigue, which he believes is brought on by the Catapres medication. Tr. 42. Plaintiff stated that he could sit for two hours without discomfort in a recliner chair. Tr. 44, 55. Plaintiff has occasional chest pain and among his many medications takes medication for angina. Plaintiff described his diabetes condition as being "under control." Tr. 39. Plaintiff reported that he has had no problem with his kidney functions since his heart attack. Tr. 40. Plaintiff is required to take suppressant drugs due to his kidney transplant. As a result, plaintiff is more susceptible to contagious diseases, and his doctors have advised him to avoid crowds. Tr. 49. Plaintiff described his primary limitation to be stress related. Tr. 53.

The ALJ credited the evidence that plaintiff was unable to return to his former stressful job or any job of equivalent stress. Thus, the ALJ assumed the burden of establishing that plaintiff retained the residual functional capacity to perform other work in the national economy. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107

S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). For this purpose, the ALJ employed a vocational expert to testify.

The vocational expert characterized plaintiff's former employment as "a sedentary, highly-skilled occupation [with] numerous transferable skills." Tr. 63. The ALJ posed a series of hypotheticals to the vocational expert. First, the ALJ asked the vocational expert to assume that plaintiff had the capacity for sedentary work, with the additional restrictions "that there be no overhead use of the arms, [and] that there be no routine public contact in the work...." Tr. 64. The vocational expert stated that there were numerous jobs compatible with plaintiff's skills and the assumed restrictions, including "CRT operator," "accounting clerk positions," and "bookkeeping positions." The expert characterized these positions as "lower stress" jobs, in that they involve routine matters. The expert also testified, however, that a significant number of jobs in the national economy did not exist to accommodate plaintiff's professed need "to avoid stress in all forms" and to take naps. Tr. 66.

The ALJ found that plaintiff retained the residual functional capacity for a sedentary job. Relying on the vocational expert's testimony, the ALJ found that there were significant numbers of jobs to which plaintiff's skills would transfer and which did not involve significant amounts of stress or exposure to other people. Thus, the ALJ concluded that plaintiff's conditions, either singly or in combination, did not prevent plaintiff from engaging in substantial gainful activity as defined by the Secretary.

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh

the evidence, or substitute its decision for that of the ALJ. *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot*, 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir. 1965).

The ALJ recognized that application of the Secretary's Medical Vocational Guidelines ("the grids") was inappropriate due to plaintiff's non-exertional limitations. *See, e.g., Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir.1988). Thus, the ALJ relied upon the testimony of the vocational expert. In concluding plaintiff could perform other jobs available in the national economy, the vocational expert assumed that the restrictions on plaintiff's ability to work were not so severe as to preclude all work activity. If plaintiff must avoid stress in all forms, or is required to take a nap during the day, the expert testified that no jobs would be available to plaintiff. Thus, the issue is whether there was substantial evidence to support the ALJ's assumption that plaintiff is not limited by these restrictions. *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.1990).

Plaintiff argues that there was insubstantial evidence of plaintiff's ability to perform sedentary work. The Secretary defines sedentary work to involve:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a). Plaintiff now submits that three conditions dictate the finding that he is not capable of sedentary work.

First, plaintiff testified that the poor circulation in his legs—caused by his diabetes, renal dysfunction, and medication—requires that he keep his legs elevated and also prevents him from standing or sitting "for a prolonged period of time." Tr. 54. Plaintiff's testimony, however, indicates that this condition has existed since his kidney problems first developed, and that the kidney transplant "has taken care of most of that, . . . ." Tr. 54. In the absence of medical evidence for the need to elevate his legs, the ALJ could properly conclude that this condition did not prevent plaintiff from performing his former sedentary job, nor that it would preclude him from another sedentary job in the future.

Second, plaintiff calls attention to his testimony that he rested once or twice a day due to fatigue. The vocational expert opined that this testimony, if credited, would prevent plaintiff from being able to engage in substantial gainful activity. The court finds no evidence in the record to refute the ALJ's rejection of plaintiff's testimony. The ALJ could properly find that this professed need would not prevent plaintiff from sedentary work. See Ruhl v. Bowen, 710 F.Supp. 255, 258–59 (W.D. Mo.1989) (ALJ could properly discount averred need for taking naps).

Finally, plaintiff argues that the danger of stress to his health prevents him from performing sedentary work. The ALJ conceded the danger that stress poses to plaintiff's health, and on this basis found that plaintiff could not perform his past relevant work. As indicated by the vocational expert, however, the issue is whether this condition prevents plaintiff from engaging in any form of work. In his letter to the disability examiner, Dr. Sharma wrote that plaintiff was "to avoid any strenuous physical exercise and situations which involves [sic] a lot of physical as well as mental stress." Tr. 172. There is some indication in the record that plaintiff's conditions at some time in the future will prevent him from engaging in any sort of gainful activity. See Tr. 184–85. Based on the evidence before the ALJ, however, the ALJ could conclude that plaintiff is capable of working in the "low stress level" sedentary jobs cited by the vocational expert.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to affirm the decision of the Secretary (Doc. 10) be granted.