968 F.2d 22
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Henry WATTS, Plaintiff-Appellant,
v.
Louis SULLIVAN, Secretary of Health & Human Services,
Defendant-Appellee.
 No. 91-3210.
 United States Court of Appeals, Tenth Circuit.
 June 29, 1992.
 
 Before STEPHEN H. ANDERSON and BALDOCK, Circuit Judges, and CONWAY,* District Judge.**
 ORDER AND JUDGMENT***
 BALDOCK, Circuit Judge.
 
 
 1
 Claimant-appellant Henry Watts appeals the district court's order affirming the Secretary's denial of disability benefits. Claimant asserted that he had been disabled, since November 1985, due to coronary artery disease and insulin-dependent diabetes mellitus. The administrative law judge (ALJ), whose determination became the Secretary's final decision, determined, after employing the five-step sequential analysis applicable to disability claims, see 20 C.F.R. § 404.1520; see also Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir.1988), that claimant was not disabled. The ALJ found that, although claimant could not return to his past relevant work as a corporate executive and could not perform a full range of sedentary work, claimant nevertheless retained the capacity to perform some sedentary work existing in the national economy.
 
 
 2
 "This court reviews the Secretary's decision to determine only whether his findings are supported by substantial evidence and whether the Secretary applied correct legal standards when making his decision." Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir.1991). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." Id. We will not reweigh the evidence or substitute our judgment for that of the Secretary. Id. Upon consideration of the record and the parties' arguments on appeal, we reverse the Secretary's denial of benefits and remand this action for the Secretary's further consideration.
 
 
 3
 Claimant, at the time he filed for benefits, was forty-two years old, college educated, and had been the vice president of a pharmaceutical company. The Secretary's vocational expert described claimant's corporate work as sedentary, highly skilled, and very stressful.
 
 
 4
 Claimant suffers from four interrelated medical conditions: insulin-dependent diabetes mellitus, hypertension, reasonably controlled with medication, renal disease, treated by a successful kidney transplant, and coronary artery disease. Claimant has suffered from insulin-dependent diabetes mellitus for over twenty years. Possibly as a result of the diabetes, he developed renal disease in 1976, which ultimately required a kidney transplant, successfully performed in 1982. In order to maintain the successful results of the transplant and to guard against rejection of the transplanted organ, claimant continues to take medication to suppress his immune system. As a result, his doctor has advised him to avoid crowds of people as much as possible, particularly during flu season. Following the transplant and while on the immunosuppressant medication, claimant returned to work at the pharmaceutical company and was able to perform his previous job duties for three years following the transplant.
 
 
 5
 In November 1985, claimant suffered a heart attack, which led to the discovery of severe coronary artery disease. Immediately following the heart attack, claimant underwent an angioplasty, a surgical procedure to clear blocked coronary arteries. Several months after the angioplasty, however, while claimant continued to rehabilitate from the heart attack, abnormal treadmill test results indicated the necessity of a second angioplasty, performed in February 1986, to reopen the same arteries cleared during the first procedure.
 
 
 6
 Claimant has not worked since he had his heart attack in November 1985. His doctor has advised him to avoid stress because it will have an adverse effect upon his hypertension, which in turn will detrimentally affect his diabetes, kidney disease, and coronary artery disease. In May 1986, claimant filed for disability benefits, asserting he had been disabled since the heart attack.
 
 
 7
 Following two evidentiary hearings, the ALJ determined that claimant's medical conditions precluded him from performing his past relevant work as a corporate executive. That determination shifted the burden of proof to the Secretary to establish that claimant still possessed the residual functional capacity sufficient to perform other work existing in the national economy. Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.1988). The Secretary meets this burden if substantial evidence supports his decision. Id.
 
 
 8
 The ALJ determined that claimant remained capable of performing sedentary work, further limited, however, by his inability to do overhead work, his need to avoid prolonged exposure to crowds of people, and his need to avoid stressful situations. The Secretary's vocational expert testified that, despite these additional restrictions upon his ability to do sedentary work, jobs existed in the national economy which claimant could still perform.
 
 
 9
 On appeal, claimant argues that the ALJ, in determining that claimant remained capable of performing some sedentary work, erred in disregarding the opinion of claimant's treating physician that claimant was totally disabled and not capable of doing even minimal work. A treating physician's opinion is entitled to substantial weight and may not be disregarded unless the ALJ sets forth specific, legitimate reasons for doing so. See Sorenson v. Bowen, 888 F.2d 706, 711 (10th Cir.1989).
 
 
 10
 The ALJ did assert specific reasons for disregarding the opinion of claimant's treating physician:
 
 
 11
 While his treating nephrologist has in the past characterized the claimant as incapable of even "minimal activity", his subsequent reports only rule out strenuous physical exercise and situations involving "a lot of physical as well as mental stress". His treating cardiologists have, however, repeatedly observed that he is asymptomatic. Even his nephrologist's notes reveal little in the way of complaints of a cardiac or renal nature despite his conclusion that the claimant is totally disabled.
 
 
 12
 Appellant's App. at 10 (citations omitted). These reasons, however, are not supported by substantial evidence found in the record. See Sorenson, 888 F.2d at 712 (although Secretary asserted specific reasons to disregard treating physician's opinion, reasons were not legitimate because they did not overcome weight of testimony and claimant's evidence).
 
 
 13
 In a letter to claimant's treating nephrologist, Dr. Sharma, immediately following the first angioplasty, one of claimant's cardiologists, Dr. McCallister, noted that "[claimant] has been advised to remain off work for the next one month.... I feel that we should keep him permanently disabled at this time, and consider a partial disability, with temporary return to part-time work in approximately one month if he remains asymptomatic." Appellant's App. at 184. Dr. McCallister indicated that he was "quite concerned" that the coronary arteries opened during the first angioplasty would rapidly become reobstructed, particularly in light of the rapid progression of coronary artery disease noted in other patients suffering from chronic renal disease. "The possibility of restenosis of his coronary atherosclerosis at this time ... is very real, as well as progressive lesions in other native arteries. The time may come where he will need to consider permanent and total medical disability." Id. at 185. During several office visits during the following two months, Dr. Sharma's records indicate that he discussed with claimant his possibly permanent disability.
 
 
 14
 Claimant did not remain stable and asymptomatic. In January 1986, claimant's treadmill test produced abnormal results, requiring claimant to undergo the second angioplasty. Immediately following that procedure, in February 1986, claimant took another treadmill test, which again produced abnormal results. Claimant's cardiologists noted that there was a 90-95% lesion in another artery that had not been dilated during the second angioplasty, which could have accounted for the abnormal treadmill test results.
 
 
 15
 On March 4, 1986, Dr. Sharma, in a statement for claimant's group disability insurance policy, stated that claimant was totally disabled for his regular occupation, and for any occupation, for an indefinite period of time. The doctor's statement noted that claimant had a "severe" limitation of his functional capacity and was incapable of performing even minimal or sedentary activity.
 
 
 16
 Substantial evidence in the record supports Dr. Sharma's opinion. Further, there is nothing in the record to indicate that claimant's condition has since improved to the extent that his doctors now consider him no longer completely disabled. Claimant underwent treadmill tests in April, June, and September of 1986, all of which again produced abnormal results.
 
 
 17
 Further, the cardiologists' use of the term "asymptomatic" does not conclusively establish that claimant is not disabled. The interpretation of the February 1986 treadmill test, which produced the abnormal results indicating a second angioplasty was necessary, nonetheless also noted that claimant remained asymptomatic. At the time of the second angioplasty, claimant's cardiologist noted that claimant suffered from "severe multivessel coronary disease that in the past had been rather asymptomatic." Id. at 257. Following the second angioplasty, claimant has taken a series of treadmill tests producing abnormal results, even though he has remained asymptomatic. See, e.g., id. at 192 (treadmill test of June 1986 "showed significant changes, but [claimant] was asymptomatic").
 
 
 18
 The use of the term "asymptomatic" merely indicates that claimant has not exhibited, at his current low level of activity, symptoms indicative of his heart condition; medical evidence, nonetheless, has established, and no one disputes, the existence of severe coronary artery disease. In light of the entire record, then, the ALJ erred in relying upon the use of the term "asymptomatic" in claimant's medical records to disregard the opinion of his treating physician.
 
 
 19
 The record further indicates that Dr. Sharma has consistently advised claimant to avoid stress.
 
 
 20
 Because of the severity of his coronary artery disease and the fact that he is a renal transplant recipient, he was advised to avoid any stressful situation.... He is advised to ... try to avoid any strenuous physical exercise and situations which involve[ ] a lot of physical as well as mental stress.
 
 
 21
 Id. at 172 (emphasis added). Dr. Sharma's statement concerning claimant's need to avoid stress is not inconsistent with his statement that claimant is totally disabled and does not restrict claimant only from highly stressful situations.
 
 
 22
 The ALJ's stated reasons for disregarding the treating physician's opinion are not supported by the record. On the other hand, the medical record does support Dr. Sharma's opinion concerning claimant's medical condition, which is uncontradicted by any other medical evidence. See Williams, 844 F.2d at 759. While a treating physician's conclusion that a claimant is disabled will not require the Secretary to find a claimant disabled for purposes of disability benefits, that opinion cannot be disregarded in considering a claimant's application for benefits absent specific, legitimate reasons to do so. Id. at 758. Because the ALJ erred in disregarding the opinion of the treating physician, we reverse the Secretary's denial of benefits.
 
 
 23
 Claimant's arguments asserted on appeal that the ALJ erred in evaluating claimant's complaints of fatigue, need to elevate his legs, and the degree to which he needs to avoid contact with other people are unpersuasive.
 
 
 24
 The Secretary's decision denying disability benefits is REVERSED, and this cause is REMANDED to the United States District Court for the District of Kansas with instructions to remand to the Secretary for further consideration in light of this decision.
 
 
 
 *
 Honorable John E. Conway, District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 ***
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3