5 F.3d 547
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Santiago U. TARANGO, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 93-2132.
 United States Court of Appeals, Tenth Circuit.
 Aug. 30, 1993.
 
 Before LOGAN and MOORE, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 
 ORDER AND JUDGMENT[1]
 
 1
 Counsel for both parties waived oral argument. After examining the briefs and appellate record, this panel has determined that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a) and 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 On September 9, 1988, Santiago M. Tarango filed an application for disability insurance benefits under 42 U.S.C. 423(a) and for supplemental security income benefits under 42 U.S.C. 1381, alleging a disability to work since June 10, 1988, due to liver and kidney problems. Tarango's application was denied administratively and he then requested, and received, a hearing before an Administrative Law Judge (ALJ), at which time he was present and represented by counsel. The ALJ, on February 16, 1990, issued a decision in which he held that Tarango was not entitled to any benefits.[2] Thereafter, the Appeals Council denied Tarango's request for review on February 11, 1991. Thus, the decision of the ALJ became the final decision of the Secretary for purposes of judicial review, 42 U.S.C. 405(g), and will hereinafter be referred to as the "Secretary's decision."
 
 
 3
 On April 9, 1991, Tarango filed a complaint in the United States District Court for the District of New Mexico, seeking judicial review of the Secretary's decision denying benefits. The Secretary filed an answer thereto. The district court, on review, concluded that the Secretary's decision was supported by substantial evidence, that she had applied the correct legal standards in making her determinations, and, on that basis, dismissed the complaint. Tarango now appeals therefrom and asks us to reverse and remand for further hearing.
 
 
 4
 The district court, after reviewing the record, affirmed, in effect, the Secretary's decision that Tarango had the residual functional capacity to perform "other work" in the national economy, i.e., work other than his last previous employment. Tarango claims, on appeal, that the record does not support this finding and further claims that the district court erred in concluding that the Secretary did not err in denying Tarango's request for a consultative evaluation for the administration of a WAIS-R test to ascertain his I.Q.
 
 
 5
 In the instant case, the Secretary's determination that Tarango was not entitled to Social Security benefits was made on the basis of the fifth step of the five-step test set out in 20 C.F.R. 404.1520(b)-(f). In other words, the Secretary found that (1) Tarango was not working in a substantial gainful activity at the time of his application for benefits; (2) he suffered from a severe impairment; (3) his impairment did not meet or equal an impairment listed in Appendix 1; (4) his impairment prevented him from continuing his past work; but (5) his impairment did not prevent him from doing "other work."
 
 
 6
 In making the fifth-step determination that Tarango could do "other work," the Secretary relied on the medical-vocational guideline as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, Rule 201.23, which provides that someone of Tarango's age, education, and previous work experience is "not disabled" when he can still perform light sedentary work. In other words, the Secretary concluded that although Tarango could not perform his past relevant work, which included work as a laborer, a farm laborer, or vacuum cleaner packer, he could, from a physical standpoint, perform sedentary work.[3] We hold that the Secretary did not err in applying the "grids" to Tarango.
 
 
 7
 The instant case is different than Thompson v. Sullivan, 987 F.2d 1482 (10th Cir.1993), where there was evidence of a nonexertional limitation, namely pain, which we said precluded the Secretary from relying "conclusively" on the medical-vocational grids. Here, there was nothing before the Secretary to indicate a nonexertional limitation. There was no evidence that Tarango's intelligence, or lack thereof, interfered with his past ability to work to the end that he had a nonexertional limitation. Moreover, Tarango apparently had no significant health problems until June, 1988. Thus, relying on the grids was proper in the instant case.[4]
 
 
 8
 Tarango also asserts that the Secretary erred in refusing his request that a consultative examination be conducted in order to determine his IQ. In this regard, the Secretary is vested with discretionary authority to order a consultative physical or mental examination. Diaz v. Secretary of Health and Human Services, 898 F.2d 774, 778 (10th Cir.1990). As we understand it, a consultative physical examination was made and the results thereof before the Secretary. In denying the request for a consultative mental examination, the Secretary spoke as follows:
 
 
 9
 Although his attorney has requested that claimant undergo a consultative evaluation to determine his I.Q. level, there is no evidence by either claimant or any treating or examining physician of record that he has any work-related difficulties caused by reduced intellectual functioning. He has had a productive work history up until his symptoms came on in June, 1988, and there is no indication that claimant has ever had difficulties working due to any mental condition. This being the case, it does not appear necessary to test claimant to find his I.Q.
 
 
 10
 In reviewing the Secretary's determination not to order a consultative mental examination, the district court spoke as follows:
 
 
 11
 Lastly, Plaintiff claims that the Secretary erred in denying his request for a consultative evaluation for the administration of the WAIS-R test to ascertain Plaintiff's IQ. Plaintiff cites 20 CFR Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.23 (1991), Example 2 for the proposition that assuming his IQ is low enough, he will satisfy all the factors listed and will be automatically entitled to benefits. The ALJ has broad latitude in ordering a consultative examination. Diaz v. Secretary of Health and Human Services, 898 F.2d 774, 778 (10th Cir.1990). I find the Secretary did not abuse his discretion in not ordering the WAIS-R testing because Plaintiff did not present objective evidence supporting his contention that he has a very low IQ.
 
 
 12
 (footnote omitted).
 
 
 13
 For the reasons given by both the Secretary and the district court, we conclude that there was no error in refusing to give Tarango a consultative mental examination. Diaz, 898 F.2d at 778.
 
 
 14
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [2]
 Tarango was 33 years old when he appeared before the Administrative Law Judge. He had been an alcoholic since he was 21, although he had stopped drinking the two years prior to his hearing before the ALJ. He has a third grade education, is illiterate in English, and resides with his parents
 Though he claims disability since June 10, 1988, Tarango did not visit his personal physician, Dr. Johnny C. Moreno, until the next month, when he sought medical care for diarrhea. From August 30, 1988, to September 3, 1988, Tarango was hospitalized in the Southwest Community Health Services Hospital for problems associated with the diarrhea, i.e. dehydration and severe weight loss. During his stay, Tarango was given a full battery of tests, all of which were negative and none explained the cause of his diarrhea. On February 14, 1989, Tarango was hospitalized again.
 At the ALJ's request, Tarango also had a consultative physical examination on January 15, 1990, with Dr. Don Clark, who noted that Tarango had regained much of the weight he had lost. Dr. Clark's tests and examination did not reveal any abnormalities, except that, once again, the cause of the diarrhea was unexplained.
 
 
 [3]
 20 C.F.R. 404.1567(a) states that sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and although it involves "sitting, a certain amount of walking and standing is often necessary."
 
 
 [4]
 In Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir.1988) (citations omitted), we stated that "automatic application of the grids is appropriate only when a claimant's RFC [residual functional capacity], age, work experience, and education precisely match a grid category." In connection therewith, we went on to state that "[a]n individual's capacity to work may also be limited by so-called nonexertional limitations, such as pain," and that when nonexertional limitations affect an individual's range of activities "the grids can only serve as a framework to aid in determining whether sufficient jobs exist for a claimant, given his limitations and characteristics." Id. (citation omitted)