25 F.3d 1055
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Lawrence BRAINARD, Jr., Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Donna Shalala,
Secretary, Defendant-Appellee.
 No. 93-5173.
 United States Court of Appeals, Tenth Circuit.
 May 5, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.[2]
 
 
 2
 Claimant Lawrence Brainard, Jr. appeals the district court's affirmance of the decision by the Secretary of Health and Human Services (Secretary) denying Mr. Brainard's applications for disability benefits and supplemental security income. Because the Secretary's decision is supported by substantial evidence and no legal errors occurred, we affirm.
 
 
 3
 This is Mr. Brainard's eighth set of applications for disability benefits and or supplemental security income payments. In his current applications, Mr. Brainard alleges that he is unable to work because of back problems, asthma, and dermatitis. After a hearing, the Administrative Law Judge (ALJ) found that although Mr. Brainard cannot return to his past relevant work, a significant number of jobs remain available which he can perform. The ALJ concluded, therefore, that Mr. Brainard is not disabled. The Appeals Council denied review and the United States District Court for the Northern District of Oklahoma affirmed.
 
 
 4
 Our review of the Secretary's decision is limited to "whether [her] findings are supported by substantial evidence in the record and whether [she] applied the correct legal standards." Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir.1991). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 5
 Although not listed as a disabling impairment, Mr. Brainard presented evidence that he received low IQ scores on the Weschler Adult Intelligence Scale (WAIS). He now argues that the ALJ erred in not finding that his mental impairment met or equaled the mental retardation listing set forth at 20 C.F.R. 1/2404, Subpt. P, App. 1 12.05C.
 
 
 6
 Section 12.05C presumes a claimant disabled when he or she (1) scores a verbal, performance, or full scale IQ of 60 through 70 on the WAIS, and (2) demonstrates a physical or other mental impairment imposing additional and significant work-related limitations on function. Id. Mr. Brainard, who earned a verbal IQ of 71, a performance IQ of 74, and a full scale IQ of 71, argues that if the standard deviation is taken into account, his scores meet the listing's criteria.
 
 
 7
 We are without authority to modify the clear language of the regulations simply because Mr. Brainard's attorney read a paper by a psychologist recommending that the standard deviation be taken into account. See Appellant's Brief at 15. The Social Security Administration (SSA) is authorized to enact regulations "to regulate and provide for the nature and extent of the proofs and evidence ... in order to establish the right to benefits." 42 U.S.C. 405(a). Under these circumstances, the agency's "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). We can only assume that the SSA was aware of the standard deviation when setting the IQ score threshold at 70 points. Because there is no evidence that the agency acted arbitrarily or capriciously, Mr. Brainard's argument that he actually met the mental retardation criteria is meritless.
 
 
 8
 There is also no merit to Mr. Brainard's argument that, based on the standard deviation, his score "equaled" the listing for mental retardation. A claimant is considered disabled when he or she has an unlisted impairment or combination of impairments for which there are medical findings equal in severity to the criteria for the closest listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. 416.926(a). Here, however, Mr. Brainard claims to suffer from a listed impairment, but simply does not meet the listing's criteria. Under these circumstances, the equivalence analysis has no application, and the ALJ properly found that Mr. Brainard's IQ scores did not meet or equal a listed impairment. Cf. Zebley, 493 U.S. at 531 n. 11.
 
 
 9
 Mr. Brainard also argues that the ALJ erred in concluding that he is not disabled by pain. "To determine whether a claimant's pain is disabling, 'the Secretary is entitled to examine the medical records and evaluate a claimant's credibility. Moreover, a claimant's subjective complaint of pain is by itself insufficient to establish disability.' " Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990)(quoting Brown v. Bowen, 801 F.2d 361, 363 (10th Cir.1986)). Here, in determining that Mr. Brainard's claim of disabling pain was not credible, the ALJ considered the lack of medical findings, Mr. Brainard's work history, his daily activities, inconsistencies in his testimony, and his lack of medication. We generally treat the ALJ's credibility determinations as binding upon review. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir.1988).
 
 
 10
 The record amply supports the ALJ's conclusion. Mr. Brainard injured his back in 1981 and underwent a lumbar laminectomy of three vertebrae in 1982. His physician noted immediate improvement after the operation and released Mr. Brainard to work in December 1982. R. IIA at 248, 252. At that time, Mr. Brainard demonstrated a full range of motion and could walk normally on his toes and heels. Id. at 255. The only restriction placed on Mr. Brainard was that he should not lift more than twenty-five pounds or engage in prolonged bending, stooping, or standing. Id. at 252.
 
 
 11
 Every medical record from 1984 to 1990 reveals that Mr. Brainard had almost a full range of motion in his back, showed no neurological deficits, and had normal muscle development with no atrophy. See, e.g., R. IIB at 411, 413-18, 431, 625-29, 652-57. His subsequent lumbar x-rays were also normal. Id. at 429, 432, 676. It is only during his last consultative examination, after filing the current application for benefits, that his range of motion became quite limited. See R. IIB at 776-78.
 
 
 12
 More importantly, Mr. Brainard's medical records are replete with medical opinions that Mr. Brainard is malingering, exaggerating, or falsifying his symptoms. See, e.g., R. IIA at 228 (describing Brainard as "poorly cooperative" and "malingering"), at 273 ("His response seems to be exaggerated because I only have to touch the lower lumbar spine, and he will literally jump .... [m]otor power cannot be tested reliably."), at 288 (observing that Mr. Brainard was lying quietly in bed until doctor entered, then began having spastic movements, and noting "this patient gives a positive answer to almost every question in the review of systems so I do not think the review ... will be of any reliability"); R. IIB at 422 (possibly fictitious seizures), at 621 (history of "pseudoseizures and malingering"), at 662 ("Throughout his course he persisted in frankly ridiculous embellishment .... [with] clearly an embellished gait."), at 665 ("he does not cooperate to any extent for formal muscle testing .... when asked to stand, he continually feinted falling"), at 666 ("This patient's examination is most remarkable for embellishment of physical symptoms which I do not feel in reality exist.").
 
 
 13
 The medical records also contain flatly inconsistent statements by Mr. Brainard regarding his physical condition, his medical history, his activity level, his alcohol consumption, and his family history. Mr. Brainard's work history also belies his claim of disabling pain. Each time that he was refused disability benefits, Mr. Brainard returned to types of work that are inconsistent with a claim of disabling pain. Based on these discrepancies, substantial evidence supports the ALJ's determination that Mr. Brainard's complaints of disabling pain were not credible. See, e.g., Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.1992).
 
 
 14
 Finally, Mr. Brainard argues that the ALJ erred in his hypothetical questions to the vocational expert in that he did not include environmental restrictions imposed by Mr. Brainard's breathing problems. The record, however, does not show that Mr. Brainard's condition imposes such restrictions. Although one physician mentions that Mr. Brainard has a history of pulmonary disease, no medical findings document the degree of impairment attributable to this disease, and no environmental restrictions have been placed on Mr. Brainard's activities. Because a hypothetical must only contain impairments found by the ALJ to hamper the claimant, there was no error in this case. See Jordon v. Heckler, 835 F.2d 1314, 1316 (10th Cir.1987).
 
 
 15
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument