**Jannett S. ALLEN, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 98–4087–SAC.

United States District Court, D. Kansas.

June 17, 1999.

Steven M. Tilton, Tilton & Tilton LLP, Topeka, KS, for plaintiff.

Nancy M. Landis, Office of United States Attorney, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") denying the plaintiff Jannett S. Allen's application for disability insurance benefits under Title II of the Social Security Act. The case is ripe for decision on the parties' briefs filed pursuant to D.Kan.Rule 83.7.

## PROCEDURAL HISTORY

The plaintiff applied for disability benefits under Title II on June 28, 1995, asserting she had been disabled as of May 30, 1995. Her application was denied initially and on reconsideration. At the plaintiff's request, a hearing before an administrative law judge ("ALJ") was held on June 18, 1996, and she appeared in person and with counsel. (Tr. 39–95). Witnesses at the hearing included the plaintiff, the plaintiff's son's fiancee, and a vocational expert. The ALJ issued his decision on December 17, 1996, finding that the plaintiff was not disabled as defined under the Social Security Act. The appeals council denied the plaintiff's request for review after also considering letters from the plaintiff's attorney. Thus, the ALJ's decision stands as the Commissioner's final decision. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994) (citing *See* 20 C.F.R. § 404.981).

## STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that

evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). "A finding of ' "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." ' " *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir.1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983)) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir.1973)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d at 858 (citation omitted).

The court's review also extends to determining whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). Besides the lack of substantial evidence, reversal may be appropriate when the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994).

The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' "

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)). The court "must examine the record closely to determine whether substantial evidence supports" the Commissioner's determination. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996). The court is not to reweigh the evidence or substitute its judgment for the Commissioner's. *Glass v. Shalala*, 43 F.3d at 1395. The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992). Nonetheless, " '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence....' " *Winfrey*, 92 F.3d at 1020 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988)). The courts do not mechanically accept the Commissioner's findings. *Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985); *see Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 538 (7th Cir.1992) ("By the same token, we must do more than merely rubber stamp the decisions of the" Commissioner. (citation omitted)). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985). " 'We examine the record as a whole, including whatever in the record fairly detracts from the weight of the ... [Commissioner's] decision and, on that basis determine if the substantiality of the evidence test has been met.' " *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir.1994) (quoting *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800–01 (10th Cir.1991)); *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than 65 years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). The claimant has the burden of proving a disability that prevents

him from engaging in his prior work for a continuous period of twelve months. *Trimiar*, 966 F.2d at 1329. The burden then shifts to the Commissioner to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The Commissioner satisfies this burden if substantial evidence supports it. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). This process comes to an end if at any point the Commissioner determines the claimant is disabled or not. *Gossett*, 862 F.2d at 805. Step one is whether the claimant is currently engaged in substantial gainful activity. If not, the fact finder in step two decides whether "the claimant has a medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287. Step three entails looking at whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, step four requires the claimant to show that because of the impairment she is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *See Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988).

## ALJ'S FINDINGS

In his order of December 17, 1996, the ALJ made the following findings:

1. Jannett S. Allen, Social Security Account No. 511–52–9096, filed an application seeking a period of disability commencing June 6, 1995 and disability insurance benefits on June 28, 1995.

2. The claimant met the requisite insured status on June 6, 1995 and continuing only through at least the date of this Decision.

3. There is no evidence that the claimant engaged in substantial gainful activity subsequent to June 6, 1995.

4. The claimant has been diagnosed with the following established medical conditions: status post compression fracture of the L2 (1992), thoracic strain, borderline obstructive lung disease, bilateral plantar calcaneal spurs, plantar fasciitis and calcaneal bursitis, traumatic arthralgias, mild dysthymia, hyperthyroidism, and osteoarthritis of the cervical spine.

5. The claimant's medical conditions neither singly nor in combination meet or equal the level of severity of one found in the Listings of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.

6. Based on the claimant's established medical problems, she is restricted from lifting weights exceeding 10 pounds maximum and 2 to 3 pounds frequently and that she needs to alternate at will between sitting and standing which would clearly prevent her return to her past work which the vocational expert testified involved "medium" to "heavy" exertion.

7. The vocational expert identified jobs which the claimant could perform with the above-described residual functional capacity including the jobs of cashier, information clerk, food tabulator and security monitor which, such an individual and the claimant's vocational profile of a "younger individual" at 43 to 45 years old with greater than a high school education and her past work experience, could perform. The numbers of those jobs which exist in the State of Kansas and in the na-

tional economy were cited by the vocational expert and the undersigned finds them to be significant.

8. The Commissioner has thus sustained her burden of proof and the claimant cannot be found to be under a disability as defined by the Social Security Act, as amended.

9. The claimant's application seeking a period of disability and disability insurance benefits must be denied.

(Tr. 18–19).

## SUMMARY OF ARGUMENTS

The plaintiff argues first that the ALJ did not correctly describe the plaintiff's residual functional capacity and failed to relate with precision certain impairments in the hypothetical question presented to the vocational expert. The plaintiff contends the ALJ should have used the Grids as a framework for finding disability. The plaintiff principally takes issue with the ALJ's evaluation of her pain testimony and accuses him of not making a complete and accurate assessment of the relevant factors. Finally, the plaintiff argues the ALJ's credibility determinations are not supported by the record and are not consistent with binding precedent.

## FACTS

The court's analysis of these issues requires only a brief discussion of the relevant facts. In May of 1992, at the age of 41, the plaintiff sustained a work-related injury to her back when she fell from a trailer while attempting to remove the tractor. X-rays revealed "a mild compression fracture of L–2." (Tr. 97, 144). Dr. Knappenberger treated her for the back injury prescribing rest and pain medication. On June 19, 1992, Dr. Knappenberger released her to return for light duty work as a groundskeeper at a hospital. The plaintiff was last treated by Dr. Knappenberger on July 24, 1992, when he released her for full duty work after noting that she had "[n]o pain or tenderness in her back." (Tr. 144).

The record shows the plaintiff next sought medical treatment for her back in May of 1996 from Dr. Mary Tawadros. The physician observed tenderness in the lower back area and increased pain with movement. Dr. Tawadros ordered a lumbar spine x-ray which showed an old fracture at L2. The physician reading the x-ray saw "no acute bony fracture or dislocation" and "no evidence of spondylolysis or spondylolisthesis." (Tr. 166). The physician performing the consultative examination in September of 1995 observed "pain in the lumbar region," "moderate to severe difficulty with orthopedic maneuvers," and "a mild compression deformity affecting the L2 vertebral body with biconcave end plate deformities, slight anterior wedging." (Tr. 150).

In March of 1994, Dr. Iliff referred the plaintiff to Dr. Abbott for pain and discomfort in her right and left heels. Dr. Abbott diagnosed "plantar calcaneal spur, plantar fasciitis and calcaneal bursitis" in both feet. (Tr. 141). Dr. Abbott's notes show that pads and orthotics improved the plaintiff's symptoms to the point that the left heel was hardly bothering her. Because of persisting pain with her right heel, the plaintiff decided to have surgery to improve the plantar calcaneal spur and plantar fasciotomy. Almost two months after the surgery, Dr. Abbott recorded: "There is no numbness in there today. She indicated she was having numbness previously. There is still tenderness. She can be on her feet for several hours before she has to stop and sit down and rest due to the pressure. This seems to be improving." (Dk.138). A month later Dr. Abbott released her for work. The last entry in Dr. Abbott's records indicates the plaintiff called June 13, 1995, saying that her foot was hurting:

> She can be on her feet for approximately 4 hours and then she starts to have discomfort. It appears that they hurt up the legs and even into her back. She says it may possibly be her back again because she has been having back problems. She has problems sitting for a

long time, also. She was advised that her feet may take a while before they start feeling normal again. She is going to go see her back doctor.

(Tr. 137).

The medical records substantiate several other conditions. During her childhood, she injured her left eye leaving her with uncorrectable $^{20}\!/_{200}$ vision in it. In March of 1994, Dr. Iliff referred the plaintiff to physical therapy for thoracic strain. Treatment included ultrasound, electrical stimulation, and instruction in independent exercise program and protective techniques. Ten days later, the physical therapist concluded the treatment, as the plaintiff indicated she was symptom free. In May of 1996, Dr. Tawadros referred the plaintiff to a specialist for hyperthyroidism. The plaintiff testified to making an appointment with the specialist, but there is nothing of record from the specialist showing treatment for this condition. In June of 1996, the plaintiff visited Dr. Thomas with complaints of neck pain beginning June 6th. Dr. Thomas's notes show an assessment of neck pain and muscle spasm either due to "sleeping in a bad posture or . . . osteoarthritis of the cervical spine." (Tr. 189). Dr. Thomas prescribed Naproxen and Flexeril with instructions to call in two weeks for a progress report.

In November of 1995, the plaintiff underwent a consultative psychological examination performed by Stanley Mintz, Ph.D. The test results showed that the plaintiff "functions within the average intellectual range," "exhibits an adequate pattern of ability and academic skill[,] and . . . is capable of being trained for a wide range of occupations." (Tr. 154). "Personality test results and interview impressions are suggestive of mild depression, most likely of long-standing duration." (Tr. 154). Mintz concluded that the plaintiff "is a pleasant woman who appears capable of being retrained and placed on a job. Her limitations appear medical in nature." (Tr. 154).

In February of 1996, the plaintiff was referred to the Kansas Vocation Rehabilitation Center "for a Level II psychometric assessment in order to obtain a worker profile for exploration of complimentary vocational options." (Tr. 176). The counselor observed:

On both days I saw her she arrived early and worked through her breaks. She worked at an average pace and required no assistance other than the standard instructions. Her concentration was good, she ignored most distractions, and exhibited no unusual frustration. She was quiet, friendly and cooperative. At the end of both half day sessions she reported back pain due to the prolonged sitting. She was casually dressed and acceptably groomed. I observed no unusual behaviors.

(Tr. 179).

## ANALYSIS

The ALJ determined here that the plaintiff could not return to her past relevant work but that she still could perform the jobs identified by the vocational expert. Once the claimant establishes her incapacity to perform her past work before her insured status expired, it becomes the Commissioner's burden to show that the claimant retained the RFC to do other work that exists in the national economy. *Thompson*, 987 F.2d at 1487. The ALJ found the plaintiff's medically determinable impairments to be as follows:

The claimant's heel conditions have been treated with prosthetic (sic) devices and surgery restoring her ability to stand up to 4 hours, per the record. Her compression fracture of the L2 of the lumbar spine is considered non-acute and mild. Her dysthymia is also considered to be reactive to her physical condition and mild. . . . Her vision impairment, i.e. her reduced vision to $^{20}\!/_{200}$ in the left eye, does not qualify, as well, because vision in the right eye has been preserved.

(Tr. 15). There is substantial evidence of record to support this description of the

plaintiff's medically determinable impairments. As for the plaintiff's RFC, the ALJ found that the plaintiff "is restricted from lifting weights exceeding 10 pounds maximum and 2 to 3 pounds frequently and that she needs to alternate at will between sitting and standing...." (Tr. 18). The overriding issue on appeal is whether this RFC finding is supported by substantial evidence. The court finds that the record does contain substantial evidence.

 Though articulated in several ways, the plaintiff's different arguments are essentially repeated attacks on the ALJ's assessment of her credibility. "Generally, credibility determinations are the province of the ALJ, 'the individual optimally positioned to observe and assess witness credibility.'" *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Secretary of Health & Human Servs.*, 933 F.2d at 801). Consequently, a "court ordinarily defers to the ALJ as trier of fact on credibility, ... [but] deference is not an absolute rule." *Thompson v. Sullivan*, 987 F.2d at 1490 (citations omitted). It is "recognize[d] that some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the fact-finder's assessment of credibility is the general rule." *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir.1987). Thus, a court "will not upset such [credibility] determinations when supported by substantial evidence." *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995) (internal quotation omitted).

 The plaintiff principally disputes the ALJ's failure to credit her testimony about the debilitating pain in her feet and lower back and her associated need to elevate her feet and to restrict her standing and walking. " 'To establish disabling pain without explicit confirmation of treating physicians may be difficult. Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence. An ALJ may not ignore the evidence and make no findings.'" *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir.1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir.1988) (citations omitted)). Where there is evidence of allegedly disabling pain, courts in the Tenth Circuit look to *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), for the framework of proper analysis:

> "We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."

*Kepler v. Chater*, 68 F.3d at 390 (quoting *Glass v. Shalala*, 43 F.3d at 1395). If objective medical evidence shows a pain-producing impairment, the ALJ then must consider the plaintiff's allegations of severe pain and decide whether he believes them. *Thompson v. Sullivan*, 987 F.2d at 1489. Factors to be considered at this point include:

> "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony and objective medical evidence."

*Kepler*, 68 F.3d at 391 (quoting *Thompson*, 987 F.2d at 1489).

 The ALJ must link his credibility finding to substantial evidence, that is, the ALJ needs to "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Kepler*, 68 F.3d at 391. "Findings as to credibility should be closely and affirmatively linked to substan-

tial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d at 1133 (footnote omitted). The "ALJ 'must articulate specific reasons for questioning the claimant's credibility' where subjective pain testimony is criti-cal." *Kepler*, 68 F.3d at 391 (quoting *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992)).

■ The ALJ's written decision reveals that he implicitly followed the procedure and considered the factors outlined in Luna in evaluating the credibility of the plaintiff's pain testimony. He found objective medical evidence of a pain-producing impairment and even concluded that the impairment could reasonably be expected to and did limit the plaintiff's ability to lift, sit and stand. After considering all relevant evidence, subjective and objective, and discussing some of the factors listed in *Luna*, the ALJ found "that the claimant's statements as to her pain and limitations are not consistent with the evidence of record which would appear to document a far greater physical and mental capacity than she and her future daughter in law testified to." (Tr. 17).

Though the ALJ's written decision could have discussed more of the Luna factors in greater detail, the simple failure to do so is not error in itself. *Bridgeford v. Chater*, 922 F.Supp. 449, 459 (D.Kan.1995). The ALJ first noted that prior to the alleged onset date the plaintiff began attending cosmetology classes and that after her alleged disability she continues to pursue this training. The ALJ appropriately considered this to be subjective evidence of the plaintiff's belief that she retains the physical and mental capacity to become a cosmetologist and to perform the standing and walking required of a cosmetologist.[1] Contrary to the plaintiff's argument, the ALJ is not penalizing the plaintiff for attempting vocational retraining but rather drawing an inference from the plaintiff's ongoing investment of time and borrowed money into training for a career that requires more physical exertion than what the plaintiff now says she is capable of doing.[2]

■ The ALJ next discussed the plaintiff's daily activities. It is true that a claimant "need not prove that her pain precludes all productive activity and confines her to life in front of the television." *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir.1996) (citation omitted). On the other hand, while evidence that a claimant engages in limited activities, such as school attendance, may not establish her ability to work, it may be considered, along with other relevant evidence, in considering entitlement to benefits. *Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir.1993); *Gossett v. Bowen*, 862 F.2d at 807. Statements regarding daily activities are evidence properly considered under the Commissioner's regulations. See 20 C.F.R. §§ 404.1529(a); 416.929(a). In short, the ALJ should consider whether the plaintiff's daily activities

1. On her daily living activities report dated July 10, 1995, the plaintiff wrote that she was receiving unemployment compensation benefits and that she was trying to find a job. To obtain these benefits, the plaintiff must have represented to the State of Kansas that she was available for work and "able to perform the duties of ... [her] customary occupation or the duties of other occupations for which ... [she] is reasonably fitted by training or experience." K.S.A. 44–705; *see Dailey v. Chater*, No. 95–2021–KHV, 1995 WL 534660, at *6 (D.Kan. Aug.4, 1995). "Though not conclusive, this evidence has adverse effects on plaintiff's credibility and provides evidence that she was not disabled. *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir.1991)."

*Dailey*, 1995 WL 534660, at *6; *Cf Johnson v. Secretary of. H.H.S.*, 5 F.3d 546, 1993 WL 326724 (10th Cir. Aug.30, 1993) (Table).

2. The plaintiff cites *Cavitt v. Schweiker*, 704 F.2d 1193, 1195 (10th Cir.1983), as support for the proposition that "[w]illingness to work or attempts to find work are not proper basis for discrediting subjective complaints of pain." (Dk.11, p. 22). The court in *Cavitt* said that such evidence was insufficient to sustain a finding of RFC for sedentary work, but it said nothing about the propriety of considering such evidence in making credibility determinations.

are substantially consistent with the kind and extent of disability claimed.

The ALJ first noted that the plaintiff continues to attend her cosmetology school. The plaintiff testified: "I'm supposed to be there 3 days a week and Saturdays and go from 5 to 9. I go 3 days a week from 2 to 9 and try to put in as many as I can. I get about 18 hours a week, approximately." (Tr. 231). When asked if she had missed any classes and the reasons, the plaintiff answered: "Because I'm hurting too—I'm in too much pain to go to there and stand or sit and do whatever it is they're wanting me to do. Usually I only have one appointment, so that was my practice, that's my schooling is to practice on a client. It's too painful to stand or sit to do it." (Tr. 231–32). The apparent contradiction in this testimony is a matter going directly to the plaintiff's credibility which the court believes is best reserved to the ALJ who actually heard it.

At the hearing, the plaintiff testified that pain kept her from doing household chores and that her son and daughter-in-law were doing all the yard work, housecleaning, laundry, and grocery shopping. She also testified that since May of 1995 she had been taking daily naps for thirty minutes to one hour. The plaintiff's testimony in this regard is not consistent with her handwritten daily activities report dated July 10, 1995. In the report, the plaintiff wrote that she did all of her own laundry, grocery shopping, and housecleaning and that she also mowed and trimmed her yard. As for naps, the plaintiff wrote that she did not take any. The Tenth Circuit has recognized such inconsistencies to be the proper subject for evaluating the plaintiff's credibility. *Bean v. Chater,* 77 F.3d at 1213. These inconsistencies support the ALJ's credibility findings. Finally, this case is not one where the ALJ in reaching a RFC determination unduly emphasized the claimant's household chores, but rather ALJ here relied on numerous factors in reaching that determination.

The ALJ also noted that the plaintiff recently participated in a two-day vocational rehabilitation program "with the expectation of finding another occupation." (Tr. 16). As the court earlier noted, the vocational counselor monitoring the plaintiff during this program in February of 1996 observed that the plaintiff "arrived early and worked through her breaks," that "[h]er concentration was good," that "she ignored most distractions and exhibited no unusual frustration," that "[a]t the end of both half day sessions she reported back pain due to the prolonged sitting," and that she exhibited "no unusual behaviors." (Tr. 179). This evidence is consistent with the ALJ's credibility determination on the plaintiff's testimony regarding her inability to work with the pain, to sit for any significant period of time, and her need to elevate her legs.

Another factor noted by the ALJ was the plaintiff's failure to seek any medical treatment for her fatigue and sleeping problems and the lack of any ongoing medical treatment for her back pain. "[T]he extensiveness of attempts [medical or nonmedical] to obtain relief [and] the frequency of medical contacts" are relevant factors in evaluating the plaintiff's subjective pain complaints. *Kepler v. Chater,* 68 F.3d at 391. The plaintiff argues this factor should have little weight here, because the plaintiff lacks the insurance and funds needed for additional medical treatment. The plaintiff does not assert that she sought low-cost medical care or that she was denied treatment for any of her alleged disabling conditions because of financial reasons. *See Merriman v. Chater,* 82 F.3d 426, 1996 WL 173152, at *2 (10th Cir. Apr.12, 1996) (Table) (citing *Murphy v. Sullivan,* 953 F.2d 383, 386–87 (8th Cir.1992) "(failure to seek low-cost medical treatment and lack of evidence claimant had been denied medical care because of financial condition supports determination that claimant's financial hardship was not severe enough to justify failure to seek medical treatment)"). Instead of

showing that the plaintiff was denied treatment, the record shows that the plaintiff in the Spring of 1996 did receive medical treatment for neck pain and sought other medical treatment through the Shawnee County Health Agency. In contrast, the medical evidence does not show that the plaintiff continued to seek medical attention for what she described as severe back and foot pain. The ALJ properly considered this factor in judging the plaintiff's credibility.

The plaintiff argues the ALJ erred in considering that no physician opined that her medical conditions were disabling. Though not conclusive in weight, the absence of such opinions is plainly relevant and proper for consideration. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir.1995). The plaintiff comments that the record does not show whether any of the physicians were specifically asked to render such an opinion. For obvious reasons, this circumstance does not vitiate this evidentiary inference, particularly when none of the physicians describe the plaintiff's medical conditions in acute or severe terms. It is appropriate for the ALJ to consider the extent to which the medical evidence corroborates the existence of a claimed impairment, its severity, and the accompanying functional limitations. *See Luna*, 834 F.2d at 165. For all the reasons discussed above, the court is satisfied that substantial evidence sustains the ALJ's credibility determination on the plaintiff's statements regarding her pain and limitations.

 The plaintiff's other attacks on the ALJ's decision are numerous, but none of them warrant reversal or remand. The court will briefly discuss several of those issues. First, the plaintiff contends the ALJ should have used the medical-vocational guidelines ("grids") as a framework "which would have required the ALJ to find plaintiff disabled." (Dk.11, p. 14). The grids are "a short-cut method for resolving disability questions whenever the claimant can perform a substantial majority of the work in the designated' RFC category." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (citations omitted). "Resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir.1991). In a case such as this, an ALJ must use more particularized proof, typically the opinion of a vocational expert, to establish that the plaintiff has the RFC to perform other work available in the national economy. Indeed, "the grids do not control the disposition." *Evans*, 55 F.3d at 532. The plaintiff's argument is without legal merit.

The court rejects the plaintiff's next argument that the ALJ failed to relate with precision all of the impairments which the ALJ accepted as true. The ALJ properly included those relevant and significant impairments which he found true from the evidence. There is nothing in the record to suggest that a restriction on bending or stooping would otherwise preclude the plaintiff from performing the available jobs identified by the vocational expert. As for the plaintiff's need to lie down and to elevate her feet periodically, both are conditions evidenced only by the plaintiff's testimony. The ALJ found neither condition credible in light of the absence of any medical treatment for them, no reports of them to any physician, no reference to them in her original disability report, and their inconsistency with her daily living activities report. The court finds that ALJ included those impairments borne out by the evidentiary record. *See Decker v. Chater*, 86 F.3d at 955. Thus, the vocational expert's testimony provided substantial evidence that there were a significant number of sedentary jobs in the local and national economies which the plaintiff could perform.

 Although it is clear that claimant suffers some pain, "[d]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe ... as to preclude any substantial gainful employment." *Gossett v. Bowen*, 862 F.2d at 807 (quotation omitted). In

short, there is substantial evidence to support the ALJ's findings that plaintiff's testimony regarding her pain and limitations was exaggerated and not credible and that the plaintiff retained the RFC to perform available work. "Regardless of whether ... [the court] would have reached a different result based on the record," its review is limited to deciding whether substantial evidence sustains the Commissioner's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.1990) (citation omitted).

IT IS THEREFORE ORDERED that the Commissioner's decision denying the plaintiff's application for benefits is affirmed.