**April D. BURROUGHS, Plaintiff,**

v.

**Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.**

Civil Action No. 06–2355–JWL–JTR.

United States District Court, D. Kansas.

May 17, 2007.

---

1. On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

James H. Green, Kansas City, MO, for Plaintiff.

Andrea L. Taylor, Office of United States Attorney, Kansas City, KS, for Defendant.

*ORDER*

LUNGSTRUM, District Judge.

On April 25, 2007, a Report and Recommendation (doc. 18) was issued by the Honorable John T. Reid, Magistrate Judge. The time in which to file objections has passed and to date no objections have been filed. The court has reviewed the Report and Recommendation and finds that it should be adopted.

IT IS THEREFORE ORDERED BY THE COURT that the Report and Recommendation (doc. 18) is adopted and the Commissioner's decision is REVERSED and this case is REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with the Report and Recommendation.

## REPORT AND RECOMMENDATION

REID, United States Magistrate Judge.

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and JUDGMENT be entered in accordance with 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

### I. Background

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and upon reconsideration. (R. 24, 32–24, 414). Upon plaintiff's timely request, a hearing was held before an Administrative Law Judge (ALJ) on Oct. 20, 2005. (R. 24, 44–45, 51–57). At the hearing plaintiff was represented by an attorney, and plaintiff, her boyfriend, and a vocational expert testi-

fied. (R. 24, 567, 568). After the hearing, the ALJ issued a decision on Jan. 27, 2006 finding plaintiff not disabled within the meaning of the Act, and denying plaintiff's applications. (R. 24–30).

The ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability and that she has impairments which are "severe" within the meaning of the Act, but that the severity of her impairments does not meet or equal the severity of any impairment in the Listing of Impairments. (R. 25–26). The ALJ considered the opinions of plaintiff's treating physicians and gave them "significant weight," but he rejected certain aspects of each treating physician's opinion. (R. 26).

The ALJ found that plaintiff's allegations regarding the severity of the symptoms resulting from her impairments is only partially credible, and assessed her residual functional capacity (RFC) for work activities. (R. 27). He determined that plaintiff is able to lift and carry up to ten pounds, can stand ten to fifteen minutes at a time, can walk up to one block at a time, and can stand and walk for a total of two hours in an eight-hour workday. *Id.* He found that plaintiff cannot climb ladders, ropes, or scaffolds, cannot crawl, kneel, or crouch, and cannot perform overhead work. *Id.* Finally, he found that plaintiff can climb one or two flights of stairs during a workday, can stoop and bend two to three times a workday, and can perform all other postural activities occasionally. *Id.*

The ALJ found that plaintiff met her burden to establish that she is unable to perform her past relevant work because of her impairments. (R. 28). Nevertheless, he found that as a "younger individual" with a high school education and no transferable skills from her past relevant work, plaintiff is able to perform other work existing in the economy in significant numbers, such as work as an order clerk, an information clerk, a production checker, a semi-conductor assembler, and a surveillance system monitor. (R. 29–30). Therefore, the ALJ found that plaintiff is not "disabled" within the meaning of the Act and denied her applications. (R. 30).

Plaintiff sought Appeals Council review of the ALJ's decision. (R. 19–20). The Appeals Council received additional evidence from plaintiff and made it a part of the record (R. 11) but nevertheless denied review. (R. 8–10). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 8); *Threet v. Barnhart,* 353 F.3d 1185, 1187 (10th Cir.2003). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir.2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir.1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." *White,* 287 F.3d at 905 (quoting *Casias v. Sec'y of Health & Human Serv.,* 933 F.2d 799, 800 (10th Cir.1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett,* 862 F.2d at 804–05;

*Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); *see also, Barnhart v. Walton,* 535 U.S. 212, 217–22, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002)(both impairment and inability to work must last twelve months). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Id.*; 20C.F.R. §§ 404.1520, 416.920 (2005).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir.2004); *Ray,* 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* at 750–51. If the severity of plaintiff's impairments does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the process. *Id.*

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy. *Williams,* 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir.2001); *Williams,* 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. *Id.*; *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999).

Plaintiff claims the ALJ erred in weighing the opinions of her treating physicians; in failing to consider the disability finding of the Missouri Department of Social Services; in failing to consider the functional effects of her combined impairments; in failing to consider whether plaintiff can sustain employment eight hours a day, five days a week; and in providing a hypothetical question to the vocational expert which did not include limitations imposed by plaintiff's pain. The Commissioner argues that the ALJ properly considered plaintiff's impairments in combination; properly weighed the opinions of the treating physicians; and properly included all of plaintiff's credible limitations in the hypothetical questioning of the vocational expert; and that, although the ALJ erred in failing to specifically mention the disability finding of the Missouri Department of Social Services in his decision, the error is harmless. The court finds that in the circumstances of this case, the ALJ's failure to consider the disability finding of the Missouri Department of Social Services is error requiring remand in order for the Commissioner to weigh the opinions of plaintiff's treating physicians in light of the disability finding by the Missouri Department of Social Services.

## III. Evaluation of Treating Physicians' Opinions

### A. Standard for Evaluating Treating Physicians' Opinions

A physician who has treated a patient frequently over an extended period of time is expected to have insight into the patient's medical condition. *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir.2003). "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [ (1) ] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ (2) ] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also,* Soc. Sec. Ruling (SSR) 96–2p, West's Soc. Sec. Reporting Serv., Rulings 111–15 (Supp.2006).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300–01 (10th Cir.2003). The ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* at 1300 (quoting SSR 96–2p). If the opinion is well-supported, the ALJ must determine whether the opinion is consistent with other substantial evidence in the record. *Id.* (citing SSR 96–2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

■ If the treating source opinion is not given controlling weight, the inquiry does not end. *Id.* A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301; 20 C.F.R. §§ 404.1527(d)(2–6), 416.927(d)(2–6); *see also Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir.2001) (citing *Goatcher v. Dep't of Health & Human Serv.,* 52 F.3d 288, 290 (10th Cir.1995)).

■ After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. *Id.* 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Id.* (citing *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir.1996)) (quoting *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987)). Courts in this jurisdiction have acknowledged various reasons for rejecting a treating source's opinion. *James v. Dep't of Health & Human Serv.,* No. 94–6124, 1995 WL 65454 at *2 (10th Cir. Feb.17, 1995) (office records do not support the conclusion); *Castellano v. Sec'y of Health & Human Serv.,* 26 F.3d 1027, 1029 (10th Cir.1994) (not supported by specific findings); *Hargis v. Sullivan,* 945 F.2d 1482, 1489–90 (10th Cir.1991) (ALJ gives specific, legitimate reasons); *Murphy v. Callahan,* No. 96–4084–SAC, 1997 WL 263739 at *5 (D.Kan. Apr.28, 1997) (physician's records reflect only plaintiff's subjective beliefs); *Douglas v. Chater,* No. 94–2330, 1996 WL 42131 at *3 (D.Kan. Jan.29, 1996) (treatment records do not support the conclusion).

### B. The ALJ's Findings and the Parties' Arguments

The court quotes the ALJ's discussion regarding plaintiff's treating physicians in its entirety:

Throughout the pertinent period in this case, the claimant has had two primary doctors. While in the Kansas City area, the claimant's primary physician was Donna Beeson, M.D. At present, the claimant lives in Wichita and her primary physician is Susan Wiebe, M.D. In October 2005, Dr. Wiebe completed evaluations of the claimant's mental and physical abilities. Dr. Beeson completed the evaluations in November 2005. Both doctors indicated the claimant had no significant mental problems or limitations. Both doctors also indicated, however, the claimant had significant physical limitations. In assessing the claimant, Dr. Beeson emphasized the claimant's osteoarthritis, degenerative joint disease, and degenerative changes in her lumbar spine. Dr. Wiebe emphasized the claimant's obesity and degenerative joint disease in the knees as well as weakness in her left upper extremity. In many ways their assessments were similar and showed the claimant to have numerous capabilities, but there were also notable differences. Dr. Beeson opined the claimant could lift up to 10 pounds and Dr. Wiebe opined the claimant could only lift less than 10 pounds. Dr. Beeson opined the claimant could not sit 6 hours in an eight-hour day and Dr. Wiebe opined the claimant could sit 6 hours in an eight-hour day. Dr. Wiebe also excluded the claimant from all postural activities while Dr. Beeson opined the claimant could perform some postural activities occasionally.

As the claimant's treating physicians, the undersigned gave significant weight to opinions of Dr. Beeson and Dr. Wiebe. They each, however, made some distinct and contrasting findings not supported by the totality of the evidence. For example, Dr. Wiebe's opinion that the clamant [sic] should be precluded from all postural activities is not supported by the overall record.

Although the claimant is limited in her postural abilities, the medical record and her own testimony indicate she is capable of performing at least some postural activities occasionally. Likewise, Dr. Wiebe's conclusion that the claimant cannot lift 10 pounds is not supported by any objective evidence or clinical finding. Furthermore, neither doctor provided clinical findings to show the claimant could not stand and/or walk 2 hours in an eight hour day. Considering these factors, the undersigned only used aspects of each doctor's assessment in determining one residual functional capacity for the claimant. In addition, because neither assessment was adopted entirely, the undersigned finds the opinions of Dr. Beeson and Dr. Wiebe, although generally persuasive, are not controlling in all respects.

(R. 25–26).

Plaintiff claims the ALJ's determination is not based on "substantial evidence of the record which confirms that Burroughs has numerous diagnostic examinations confirming that she has arthritic impairments in her neck, back, left upper extremity, both knees and pain which radiates throgh [sic] her body. In fact, both Dr. Wiebe and Dr. Beeson make reference to the various diagnostic findings in their RFC reports." (Pl.Br.23–24). Plaintiff claims that the ALJ did not evaluate the treating physicians' opinions using the regulatory factors (Pl.Br., 26), that Eighth Circuit law requires a treating physician's opinion be given controlling weight when it is based on a lengthy treatment record (Pl.Br., 27), and that the ALJ "succumbed to the temptation to 'play doctor' and made his own

independent medical findings" unsupported by medical evidence in the record. (Pl. Br., 28). The Commissioner argues that the ALJ properly considered the treating physicians' opinions, gave them substantial weight, and properly articulated reasons which are supported by evidence in the record as a whole for discounting portions of each physician's opinion.

## C. Analysis

▮ As quoted above, the ALJ found that the treating physicians' opinions, although similar, are inconsistent with each other in certain respects and in other respects are inconsistent with other record evidence. (R. 25–26). Plaintiff does not controvert these findings. Therefore, it was proper for the ALJ not to give controlling weight·to the treating physicians' opinions. The court is unaware whether Eighth Circuit law requires controlling weight be given a treating physician opinion based merely on a lengthy treatment history (as plaintiff asserts in her brief). Nonetheless, Eighth Circuit law is not binding on this court. The Tenth Circuit has found that a treating physician's opinion is entitled to controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," *and* is consistent with the other substantial evidence in the record. *Watkins,* 350 F.3d at 1300 (quoting SSR 96–2p). Moreover, plaintiff does not explain which treating physician's opinion should be given controlling weight or how the inconsistencies between the opinions should be resolved if both opinions are to be given controlling weight.

As plaintiff asserts, clinical and laboratory diagnostic findings confirm that plaintiff has arthritis in her neck, back and knees, and Drs. Beeson and Wiebe cite to certain clinical and laboratory diagnostic findings in making their assessments. (R. 400)(citing MRI of cervical spine, body mass index of 54); (R. 408)(citing MRI of L–S spine,

x-rays). The fact that plaintiff has these impairments, however, does not equate to a finding that plaintiff has all of the limitations as stated in either of the physicians' assessments. The ALJ found that plaintiff has severe impairments of "degenerative disc disease of the lumbar, thoracic, and cervical spine with cervical radiculopathy, stenosis, and disc space narrowing as well as knee arthritis, lower extremity edema, and morbid obesity." (R. 26). In evaluating the treating physicians' opinions, the question is not what impairments plaintiff has, but what weight should be given the physicians' opinions in light of all the record evidence.

The ALJ stated that Dr. Wiebe's opinion that plaintiff cannot lift ten pounds is not supported by objective evidence or clinical findings, and that neither physician provided clinical findings to support her opinion that plaintiff cannot stand and/or walk two hours in an eight-hour workday. (R. 26). Although plaintiff objects to these findings in general and argues that the physicians' opinions are supported by objective evidence or clinical findings, she points to no specific evidence in the record which is contrary to the ALJ's rationale for discounting their opinions.

▮ Plaintiff claims the ALJ did not evaluate the treating physicians' opinions by the regulatory factors contained in 20 C.F.R. § 404.1527. (Pl.Br., 26–27). A fair review of the decision reveals plaintiff's claim is without merit. The ALJ noted that each physician was a treating physician—Dr. Beeson when plaintiff lived in Kansas City, and Dr. Wiebe when plaintiff lived in Wichita. (R. 25). Before discussing the physicians' opinions specifically, the ALJ noted that plaintiff had had MRI scans of her spine, that plaintiff had arthritis in both knees and might eventually need knee replacement, and that plaintiff had possible spinal stenosis of the lumbar

spine and evidence of central stenosis of the cervical spine. (R. 25). As quoted herein, the ALJ specifically addressed the degree to which each opinion is supported by relevant evidence and the consistency between each opinion and the record as a whole. (R. 26). While the ALJ might have been more specific and detailed in his analysis of the regulatory factors, it is clear he evaluated the opinions in relation to the factors. The court will not require a factor-by-factor analysis when it is clear the ALJ applied the correct legal standard in his evaluation. Plaintiff does not point to evidence which establishes that particular, relevant factors were ignored by the ALJ.

██ Plaintiff asserts that, without support in the record, the ALJ succumbed to the temptation to "play doctor" and substituted his lay opinion for that of the medical doctors. Plaintiff's charge is not supported by the evidence. Plaintiff asserts that there is no medical evidence which supports the ALJ's finding that plaintiff can stand and walk a total of two hours in an eight-hour workday. (Pl.Br., 24). While it is true that the ALJ discounted the treating physicians' opinions regarding plaintiff's ability to stand and walk, there is record evidence from which to find that plaintiff can stand and walk at least two hours in a workday. (R. 392). Other than his assessment of plaintiff's ability for standing and walking, the ALJ relied upon the treating physicians' opinions in making his RFC assessment. (R. 26). He stated what portions of the opinions he accepted, what portions of the opinions he rejected, and he explained the evidentiary bases for his determination. *Id.* This is not a case where the ALJ adopted the opinion of a reviewing consultant over that of the treating physicians. Rather, he merely used the reviewer's opinion to fill a gap where he did not accept the treating physicians' opinions.

Although the court is not inclined to accept plaintiff's arguments regarding evaluation of the treating physicians' opinions, neither can it find that the ALJ's evaluation is supported by substantial evidence in the record as a whole. The record compels the court to remand for further proceedings because, as plaintiff argues, the ALJ erred in failing to consider the disability finding of the Missouri Department of Social Services. (Pl. Br., 28–29). As plaintiff explains, the Missouri Department of Social Services issued a decision finding plaintiff "is permanently and totally disabled and unemployable" on Mar. 19, 2004. (R. 63–67)(quotation from (R. 66)). The agency's decision was provided to the ALJ the day before the hearing (R. 62), and was received into evidence at the hearing. (R. 570–71). In the "Conclusions of Law" section of the Missouri Department of Social Services's decision, it is stated that

medical eligibility will be established if the Claimant meets the definition of disability as established by the Social Security Administration for applicants or recipients of Supplemental Security Income (SSI) or Social Security Disability benefits (RSDI). Disability as defined by the Social Security Administration and used by it and the Family Support Division is the individual's inability to be gainfully and substantially employed for one year or longer due to a physical or mental incapacity.

(R. 65).

██ As plaintiff argues, disability findings by other agencies are entitled to weight and must be considered by the Commissioner, even though they are not binding on the Social Security Administration. *Baca v. Dep't of Health and Human Serv.,* 5 F.3d 476, 480 (10th Cir.1993). Here, although the Missouri Department of Social Services's decision tends to sup-

port the treating physicians' opinions, the ALJ did not even mention that decision in his decision. The Commissioner agrees with plaintiff's statement of the law and admits that "the ALJ should have specifically mentioned the finding in his decision." (Comm'r.Br., 7). However, the Commissioner argues the error is harmless because it did not have a substantial influence on the outcome or leave grave doubt whether it had substantial influence on the outcome here. *Id.*

■ The court finds it was error for the ALJ to fail to consider the Missouri Department of Social Services's decision. Moreover, it cannot find the error was harmless. As the Commissioner argues, courts have applied harmless error analysis to judicial review of Social Security decisions. *Fischer–Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir.2005)(noting that *Clifton v. Chater,* 79 F.3d 1007 (10th Cir. 1996) does not categorically reject harmless error analysis); *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir.2004)(harmless error analysis may be appropriate to supply a missing dispositive finding); *Bernal v. Bowen,* 851 F.2d 297, 302 (10th Cir.1988) (harmless error for ALJ rather than psychologist to fill out PRTF); *Kerner v. Celebrezze,* 340 F.2d 736, 740 (2d Cir.1965) (no reason the harmless error rule should not be applied in judicial review of an administrative decision); *and, Arroyo v. Apfel,* No. 99–4060, 1999 WL 1127656, *2 (10th Cir. Dec.9, 1999) (Where there is substantial evidence in the record to support the ALJ's conclusion, failure to explicitly relate the evidence to the conclusion is harmless error.). The Tenth Circuit has held that where there is substantial evidence to sustain the ALJ's decision despite an error, the error is harmless, and the court will not remand merely for a ministerial correction. *Wilson v. Sullivan,* No. 90–5061, 1991 WL 35284, *2 (10th Cir. Feb.28, 1991); *see also, Fischer–Ross,* 431 F.3d at 730 (rejecting a finding which

would lead to "unwarranted remands needlessly prolonging administrative proceedings.").

Applying harmless error analysis in this case, however, would constitute an improper post hoc justification of the ALJ's decision because there is no evidence that the ALJ here in fact considered the Missouri Department of Social Services's decision. The Tenth Circuit has considered the implications of using harmless error analysis to make a finding of fact "on the basis that the missing fact was clearly established in the record." *Allen v. Barnhart,* 357 at 1145.

> Two considerations counsel a cautious, if not skeptical, reception to this idea. First, if too liberally embraced, it could obscure the important institutional boundary preserved by *Drapeau's* [255 F.3d at 1214] admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny. With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way.

*Id.*

Here, there is no evidence the ALJ considered the Missouri Department of Social Services's decision. Moreover, an admin-

istrative factfinder might reasonably accept the Missouri Department of Social Services's decision, and, therefore, credit the treating physicians' opinions that plaintiff cannot walk or stand for two hours in a workday, and find plaintiff "disabled" within the meaning of the Act. Therefore, remand is necessary for the Commissioner to consider that decision and properly determine the weight to be given that decision which was made by an agency with expertise in the field and which appears to have applied the same standard as must be applied in Social Security disability cases such as this. The Commissioner must also reevaluate the weight to be given the opinions of plaintiff's treating physicians in light of all the evidence, including the Missouri Department of Social Services's decision.

Because the court must remand the decision for proper consideration, plaintiff may make her arguments on remand regarding the combined effects of her impairments, her ability to sustain employment, and the hypothetical questioning of the vocational expert.

**IT IS THEREFORE RECOMMENDED** that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the decision below and REMANDING the case to the Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a

waiver of appellate review. *Hill v. Smith-Kline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir.2004).